DEPARTMENT OF HEALTH, STATE OF COLORADO, Appellant and Cross–Appellee,

v.

HECLA MINING COMPANY, Appellee and Cross–Appellant.

No. 87CA1414.

Colorado Court of Appeals, Div. II.

May 25, 1989.

Rehearing Denied June 22, 1989.

Certiorari Denied Oct. 30, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Jerry W. Goad, First Asst. Atty. Gen., Denver, for appellant and cross-appellee.

Davis, Graham & Stubbs, Joseph P. McMahon, Jr., and Gail L. Wurtzler, Denver, for appellee and cross-appellant.

Opinion by Judge SMITH.

In this eminent domain proceeding, the condemning authority, the Department of Health (State), and the owner of the condemned property, Hecla Mining Company (Hecla), each appeal from a judgment entered on a jury verdict which awarded Hecla $2,881,821.42 as just compensation for its condemned land. The State appeals the jury's award and the trial court's award of Hecla's expert witness fees. Hecla appeals the trial court's denial of its motion to dismiss the State's petition in condemnation and the trial court's denial of attorney fees and additional expert witness fees. We affirm in part and reverse in part.

Hecla is the owner of property which had previously been used as a mill to process uranium ore for ultimate sale to the United States Government. For many years, the mill site has been inactive and has been, and still is, highly contaminated with radioactive uranium tailings. Hecla acquired the property prior to 1986 with full and complete knowledge of its contaminated condition.

In August 1986, the State filed a petition in condemnation to acquire Hecla's property. Acquisition was in accordance with the Uranium Mill Tailings Radiation Control Act (Radiation Control Act) 42 U.S.C. §§ 7901 to 7942 (1978) and pursuant to § 25–11–301, et seq., C.R.S. (1982 Repl.Vol. 11). These laws constitute a program whereby the state and federal government cooperate in the decontamination of contaminated inactive uranium mill sites with the costs being shared between the federal and state governments.

The legislative history shows that the Radiation Control Act was enacted due to concern over the health threat posed by unstable and uncontrolled inactive uranium mill tailings and *not* to meet any legal obligation on the part of the federal government to remedy the hazardous situations at such sites. Concern over costs of the program prompted Congress to provide

for state acquisition of mill sites, particularly if decontamination would result in windfall profits to an owner who retained the site after decontamination.

Hecla's property qualified for decontamination under the Radiation Control Act, and an appraisal commissioned by the federal government disclosed that decontamination would cost approximately $33 million, and that in a decontaminated state the property would have a value of approximately $3 million. Because the costs of decontaminating the site located on Hecla's property far exceeded the value of the property in its decontaminated state, the Department of Energy directed the State to acquire Hecla's property.

In October 1986, after receiving notice of the condemnation action, Hecla executed a unilateral consent which granted the federal and state government the right to enter and inspect the property as well as the right to remove, or otherwise dispose of, the tailings found on the site.

Notwithstanding this consent, condemnation proceedings continued and in December 1986, the State sought and obtained possession of the property. Thereafter, upon trial of the matter, the jury returned a verdict determining that $2,881,821.42 was the fair market value of the property.

I.

Hecla argues in its cross-appeal that the judgment in condemnation should be vacated and the State's petition for condemnation should be dismissed because the State does not have the authority to condemn Hecla's property. We disagree.

Hecla asserts that there is no public purpose to justify condemnation since it voluntarily granted the State the right to enter the property and to clean up the uranium tailings. Thus, it contends, the only purpose of condemnation is to transfer the land from it to someone else, or to prevent it from receiving windfall profits. In support of this argument, Hecla argues that the purpose of the Radiation Control Act is to meet a federal obligation to remedy haz-

ardous situations caused by government-initiated contamination at the mill site.

◼ Private property may not be condemned unless the purpose for which condemnation is sought is judicially determined to be a public use and there exists express, or necessarily implied, statutory authority to condemn. Colo. Const., art. II, § 15; *Buck v. District Court*, 199 Colo. 344, 608 P.2d 350 (1980).

◼ While the existence of a public purpose may be judicially determined, the issue of the necessity of the specific condemnation in order to accomplish the public purpose is a determination reserved to the condemning authority. Absent a showing of bad faith by the condemning authority as to that issue, its determination is not to be disturbed by the courts. *Thornton Development Authority v. UPAH*, 640 F.Supp. 1071 (D.Colo.1986).

◼ We do not find support in the federal law for Hecla's assertion that the purpose of the Radiation Control Act is to meet an obligation to remedy government-initiated contamination. The Radiation Control Act and § 25–11–301, et seq., C.R.S. (1982 Repl.Vol. 11) expressly set forth, as the purpose for the legislation, the protection of the public health, safety, and welfare from the potential and significant radiation health hazards of uranium mill tailings. 42 U.S.C. § 7901(b) (1978) and § 25–11–301, C.R.S. (1982 Repl.Vol. 11). This is an undisputable public purpose as the trial court found when it denied Hecla's motion to dismiss.

These federal and state laws also provide explicit statutory authority to condemn. Although the Radiation Control Act does not use the term "condemnation", it specifically requires that the state have the authority to acquire property if acquisition is deemed appropriate by the Secretary of Energy. 42 U.S.C. § 7914(a). This acquisition authority was expressly enacted by the General Assembly as § 25–11–303(1)(d), C.R.S. (1982 Repl.Vol. 11). Thus, we hold that the state has not only the constitutional, but the statutory authority as well, to condemn Hecla's property.

Hecla, however, argues that the State seeks to condemn for non-public purposes because the October unilateral consent, which granted the State access for cleanup, disposes of any public health justification for condemnation. In support of this position, Hecla relies on 42 U.S.C. § 7913(c)(1) of the Radiation Control Act which authorizes, *inter alia*, cleanup with the consent of the landowner. We disagree.

◼ The decision to acquire Hecla's property to accomplish the cleanup, rather than to operate under a consent executed by Hecla, is an issue regarding the means for accomplishing a public purpose. Thus, the decision addresses an issue of necessity, authority over which is vested in the condemning authority. *Welch v. Denver*, 141 Colo. 587, 349 P.2d 352 (1960).

The Radiation Control Act indeed does provide, as Hecla asserts, for cleanup pursuant to a landowner's consent in 42 U.S.C. § 7913(c)(1). However, that provision is expressly limited to instances in which acquisition is not required under 42 U.S.C. § 7914(a). 42 U.S.C. § 7914(a) provides:

"Each cooperative agreement under section 7913 of this title shall require the state, where determined appropriate by the Secretary with the concurrence of the Commission, to acquire any designated processing site, including where appropriate any interest therein. In determining whether to require the State to acquire a designated processing site or interest therein, consideration shall be given to the prevention of windfall profits."

This cooperative site cleanup is expressly made subject to the authority of the secretary and the commission to require acquisition. Thus, the act defers the decision regarding whether to acquire or merely cleanup the site to the federal government and to the state government as the condemning authority.

Therefore, the Secretary of the Interior, not Hecla, has the authority to decide whether the State should act under Hecla's consent or should condemn the property. Without evidence that the State or federal

government has acted in bad faith, the decision to condemn rather than act pursuant to the consent is not to be disturbed by the courts.

## II.

The State contends in its appeal that the trial court erred at the valuation trial in its evidentiary rulings and instructions to the jury. We agree.

### A.

First, we agree with the State's assertion that, by allowing the jury to consider evidence on the prospective value of the property after decontamination, the court precluded the jury from ascertaining the property's fair market value at the time of the taking.

Considerations which may be taken into account when ascertaining fair market value of condemned land include the present condition and use of the property, and its reasonable use in the future. *Board of Commissioners v. Nobel*, 117 Colo. 77, 184 P.2d 142 (1974).

At the valuation trial, the State presented expert testimony that the property had zero value on the date of the taking because of its radioactive contamination, and the property's lack of any beneficial use in its present condition. In contrast, Hecla's expert witnesses testified that the property had a present market value of $3.5 million based, on its location and the comparison sales of similar properties which, like Hecla's, were vacant (although not contaminated) and adaptable to commercial and industrial development. However, Hecla's expert witnesses admitted that their appraisals were based on the following assumptions: The uranium tailings had been cleaned up and removed; and the property was stabilized and ready to be developed to the highest and best use available to contaminated land.

There is abundant evidence in the record that in December 1986, when the State took possession of Hecla's property, it was heavily contaminated. The tailings were not stabilized, and the property was not capable of being developed for any useful purpose. Therefore, because Hecla's appraised value of the property was not based on the use and adaptability of the property in its contaminated condition, it failed to reflect the fair market value of the property at the time of the taking.

In allowing this testimony, the trial court relied on *Board of Commissioners v. Nobel, supra*. However, we do not read that case as allowing present value to be premised on future events which are contingent upon the completion or the existence of the very project which necessitates the public acquisition. Such value, because it fails to reflect the actual condition of the property at the time of the taking, is necessarily speculative or prospective and thus inadmissible. *Union Exploration Co. v. Moffat Tunnel Improvement District*, 104 Colo. 109, 89 P.2d 257 (1939). Therefore, we hold that the trial court erred in denying the State's motion to exclude the presentation of evidence as to the value the property would have after it was decontaminated.

### B.

Second, the State argues that in failing to instruct the jury to disregard the value the property would have in a decontaminated state and in instructing the jury to disregard the health hazards presented by the contamination, the jury was forced to value the property as if it had been decontaminated. We agree that such instructions were erroneous.

An owner of land which is condemned is not entitled to recover any increase or enhancement in the value of his land which is caused by the very improvement for which the land is being acquired. *Williams v. City & County of Denver*, 147 Colo. 195 363 P.2d 171 (Colo.1961); § 24–56–117, C.R.S. (1982 Repl.Vol. 10).

To analyze the State's contention of error, it is first necessary to consider whether the jury received evidence of enhanced value. The record clearly demonstrates that such evidence was presented.

It discloses that decontamination of Hecla's property was the sole purpose for which the public acquisition was initiated and that the undisputed cost of such decontamination was estimated to be $33 million. Further, the testimony of the parties' expert witnesses clearly demonstrate that, when decontamination of the property is assumed, the value of the property increases from zero to $3.5 million. If we consider the evidence as a whole, the only conclusion that can be drawn is that all of the value in Hecla's property is attributable to the very improvement, here decontamination, for which the land is being acquired. Thus, the appraisal of $3.5 million represents an enhanced value which, if considered by the jury in ascertaining Hecla's award, violates the constitutional principles of just compensation. *Williams v. City & County of Denver, supra.*

The first instruction which the State challenges reads as follows:

"In determining the market value of the property actually taken, you should consider its use, condition, improvements, surroundings, and capabilities including the date of valuation, December 8, 1986.

In addition, you should consider the most advantageous use or uses to which the property might reasonably and lawfully be adapted or put in the future by persons of ordinary prudence and judgment. Such evidence may be considered, however, only insofar as it may assist you in determining the reasonable market value of the property as of the date of valuation. It may not be considered for the purposes of allowing any speculative damages or value.

Because the tailings were placed on the property by, or for the benefit of, the federal government and, accordingly, are the responsibility of the federal government, you should not consider any evidence of a health hazard associated with those tailings in determining the reasonable market value of the property."

The pertinent part of the instruction tendered by the State but refused by the trial court provided:

"In determining the market value of the property taken, you are not to take into account any increase in value which could be caused by the proposed decontamination of the property."

The instructions given emphasized the date of valuation as the date for determining the market value. However, they did not properly direct the jury, when arriving at such value, to consider evidence regarding the value of the property at the time of the taking. The instructions expressly prohibited the jury from considering evidence of the health hazards associated with the uranium tailings. The jurors could reasonably have interpreted this instruction to mean that they could not consider evidence presented by the State that cleanup would cost $33 million and that in its contaminated state the property had no value and no beneficial use. Thus, it was incorrect for the trial court to assume, as the record discloses, that including the date on which the value should be determined accomplished the same purpose as an instruction prohibiting consideration of enhanced value.

Furthermore, while the instructions provided that future use could not include speculative damages or values, by prohibiting the jury from considering evidence of health hazards, the instructions themselves assumed a condition which was speculative at the time of the taking.

Additionally, when acquisition is based entirely on the health hazards the property presents, excluding evidence relating to such hazards' impact on the property's market value leaves only the evidence of the property in its decontaminated, or enhanced state, for consideration.

Finally, the instruction directing the jury not to consider evidence of the health hazards incorrectly assumes, and indeed advises the jury, that the government is under a legal obligation to remedy the hazardous situation caused by the contamination. We find no support for this conclusion in the Radiation Control Act or the laws which authorize the State to participate with the federal government in removing the health

hazard. There is therefore no basis for such an instruction to be given to the jury.

Accordingly, we hold that the effect of the instructions given, as well as the failure to include the state's tendered instruction, forced the jury to value Hecla's property in its enhanced state and were thus reversible error.

## III.

Finally, the State appeals the district court's award of fees for expert witnesses who testified regarding inadmissible evidence. Hecla argues on its cross-appeal that reasonable attorney fees and fees which were incurred in retaining a witness who did not testify should have been awarded.

## A.

■ In eminent domain actions, awarding expert witness fees is a matter within the discretion of the trial court. However, the costs relative to testimony relating to inadmissible evidence is not reimbursable. *City of Lakewood v. DeRoos,* 631 P.2d 1140 (Colo.App.1981).

■ The district court awarded fees for two witnesses called by Hecla to testify regarding the value of the property. By these expert witnesses' own admission, such testimony was premised on the value of the property in its decontaminated, and thus enhanced, condition. Because we have held this testimony was inadmissible, the trial court erred in its award of these witness fees.

The trial court failed to award fees for an expert witness which Hecla had prepared to testify if the court had granted the State's motion to exclude evidence on the market value of the property in the decontaminated state. In the event this witness testifies at the new trial, the trial court can then determine whether, and to what extent, his preparation and testimony should be compensated as part of Hecla's allowable costs.

## B.

The trial court also failed to award attorney fees incurred by Hecla.

Attorney fees are not recoverable in eminent domain proceedings unless specifically provided for by statute. *Leadville Water v. Parkville Water District,* 164 Colo. 362, 436 P.2d 659 (1967). Section 38–1–122(2), C.R.S. (1988 Cum.Supp.) codifies this rule by providing that just compensation may include attorney fees only if such fees are "otherwise provided by law."

■ Since we find no express statutory authority for the recovery of attorney fees in an eminent domain action against the State, we agree with the trial court that such fees should not be awarded.

The judgment is affirmed insofar as the trial court refused to dismiss the eminent domain proceeding and as to its denial of attorney fees and fees for the additional expert witness who testified as to enhanced value. The judgment is reversed as to the amount awarded as compensation for the taking and the cause is remanded for a new trial to determine proper "just compensation" in accordance with the views expressed in this opinion.

STERNBERG and REED, JJ., concur.