In re the GENERAL ADJUDICATION OF ALL RIGHTS TO USE WATER IN the BIG HORN RIVER SYSTEM and All Other Sources, State of Wyoming.

RIVERTON VALLEY IRRIGATION DISTRICT, Appellant,

v.

BIG HORN CANAL ASSOCIATION, Bluff Irrigation District, Fritz Ditch Company, Hanover Canal Company, Highland Hanover Irrigation District, Kirby Ditch Company, Inc., Lower Hanover Canal Association and the Upper Bluff Irrigation District; Eastern Shoshone Tribe; Northern Arapaho Tribe; United States of America; and State of Wyoming, Appellees.

MIDVALE IRRIGATION DISTRICT, Appellant,

v.

BIG HORN CANAL ASSOCIATION, Bluff Irrigation District, Fritz Ditch Company, Hanover Canal Company, Highland Hanover Irrigation District, Kirby Ditch Company, Inc., Lower Hanover Canal Association and the Upper Bluff Irrigation District; Eastern Shoshone Tribe; Northern Arapaho Tribe; United States of America; and State of Wyoming, Appellees.

LeCLAIR IRRIGATION DISTRICT, Appellant,

v.

BIG HORN CANAL ASSOCIATION, Bluff Irrigation District, Fritz Ditch Company, Hanover Canal Company, Highland Hanover Irrigation District, Kirby Ditch Company, Inc., Lower Hanover Canal Association and the Upper Bluff Irrigation District; Eastern Shoshone Tribe; Northern Arapaho Tribe; United States of America; and State of Wyoming, Appellees.

J. & D. APLAND; Campbells, Inc.; John and Lorna Collins; Billy M. and Barbara M. Daniels; Jim B. Enis; Bayard and Meloena Fox; Kenneth A. Hood; Johnson Cattle Co., Inc. (Burke Johnson); Robert W. Stewart; James Thron-

burg; and Ruth Clare Yonkee, Appellants,

v.

BIG HORN CANAL ASSOCIATION, Bluff Irrigation District, Fritz Ditch Company, Hanover Canal Company, Highland Hanover Irrigation District, Kirby Ditch Company, Inc., Lower Hanover Canal Association and the Upper Bluff Irrigation District; Eastern Shoshone Tribe; Northern Arapaho Tribe; United States of America; and State of Wyoming, Appellees.

G.A. BROWN TESTAMENTARY TRUST, Appellant,

v.

BIG HORN CANAL ASSOCIATION, Bluff Irrigation District, Fritz Ditch Company, Hanover Canal Company, Highland Hanover Irrigation District, Kirby Ditch Company, Inc., Lower Hanover Canal Association and the Upper Bluff Irrigation District; Eastern Shoshone Tribe; Northern Arapaho Tribe; United States of America; and State of Wyoming, Appellees.

Nos. 94–58 to 94–62.

Supreme Court of Wyoming.

July 13, 1995.

Rehearing Denied Aug. 16, 1995.

Stetson & Williams, P.C., Albuquerque, NM, Richard M. Berley of Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, William J. Thomson, III of Dray, Madison & Thomson, Cheyenne, for appellees Eastern Shoshone and Northern Arapaho Tribes.

Lois J. Schiffer, Acting Asst. Atty. Gen., and James J. Clear, Atty., Indian Resources Section, of Environment and Natural Resources Div., Dept. of Justice, Washington, DC, for appellee U.S.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Deputy Atty. Gen., and Frederick E. Chemay, Asst. Atty. Gen., Cheyenne, Michael D. White and Thomas J. Davidson of White & Jankowski, Denver, CO, Sp. Asst. Attys. Gen., for appellee State of Wyoming.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The sole issue raised in these several cases is whether, in the General Adjudication of All Rights to Use Water in Big Horn River System and All Other Sources, the court should recognize so-called "super-*Walton*" rights.[1] The common contention of the several appellants is that water rights appurtenant to lands originally owned by Indian tribes should have a priority date of July 3, 1868, the date of the Treaty of Ft. Bridger, 15 Stat. 673. More specifically, they contend lands acquired by patents issued under the federal Homestead Act of May 20, 1862, 12 Stat. 392, 43 U.S.C. § 161, *et seq.;* Preemption/Cash Entry Act of April 24, 1820, 3 Stat. 566; Desert Land Act of March 3, 1877, 19 Stat. 377, 43 U.S.C. § 321, *et seq.;* or Federal Reclamation Act of 1902, 43 U.S.C. § 371, *et seq.,* may claim that priority date. The appellees insist the priority date of water rights appurtenant to such lands is the one assigned by the State Engineer in granting the permit to use the water. The trial court ruled the treaty priority date of July 3, 1868 would not apply to water rights appurtenant to such lands. We hold the decision

Donald P. White of White & White, P.C., Riverton, for appellant in No. 94–58.

Richard A. Simms and Jay F. Stein of Simms & Stein, P.A., Santa Fe, NM, Jay E. Vincent of Vincent & Vincent, Riverton, for appellant in No. 94–59.

Norman E. Young of Hill, Young & Barton, P.C., Riverton, for appellant in No. 94–60.

Sky D. Phifer, Lander, for appellants in No. 94–61.

Michael S. Messenger of Messenger & Jurovich, Thermopolis, for appellant in No. 94–62.

John W. Davis of Davis, Donnell, Worrall & Bancroft, P.C., Worland, for appellees Big Horn Canal Ass'n, Bluff Irr. Dist., Fritz Ditch Co., Hanover Canal Co., Highland Hanover Irr. Dist., Kirby Ditch Co., Inc., Lower Hanover Canal Ass'n, and The Upper Bluff Irr. Dist.

John C. Schumacher, Fort Washakie, Susan M. Williams and Jane Marx of Gover,

---

1. Because these claims expand upon the holding in *Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir.1981), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981), they have been dubbed "super-*Walton*" rights.

of the trial court is correct, and the Judgment and Decree entered on January 28, 1994 is affirmed.

In the Judgment and Decree entered in the district court, the judge set out the essential question as: **"Should lands not acquired from Indian allottees be awarded a reserved water right?"** We describe the same issue in concluding the only question before this court is whether lands that were originally part of Wind River Indian Reservation but which were never owned by Indian allottees should be afforded a priority date for appurtenant water rights of July 3, 1868. The several parties have couched the same issue in various ways in their briefs.[2]

This appeal arises out of the continuing adjudication of all water rights in the Big Horn River System which was begun in 1977 in accordance with the provisions of WYO. STAT. § 1–37–106 (1977) and the McCarran Amendment, 43 U.S.C. § 666 (1976). The adjudication is being conducted in phases to settle more than 20,000 water rights on the river system. The dispute involved in this appeal is part of the proceedings conducted under Phase I, which involves only claims relating to the establishment of the Wind River Indian Reservation by the 1868 Treaty of Ft. Bridger.

The appellants in the several cases are irrigation districts, individuals, corporate en-

---

**2.** Appellant in Case No. 94–58, Riverton Valley Irrigation District, identifies a single issue for review which is stated as follows:

Should lands ceded from the Wind River Indian Reservation pursuant to the Second McLaughlin Agreement dated April 21, 1904 and approved by Act of Congress on March 3, 1905 (33 Stat. 1016), not acquired from Indian allottees or reacquired by the Shoshone and Arapahoe Tribes before *Big Horn I*, be awarded a reserved water right with a priority date of 1868?

Another appellant, Midvale Irrigation District, in Case No. 94–59, enumerates the following two issues:

Whether the trust imposed by the Second McLaughlin Agreement acted to retain appurtenant reserved rights on land ceded from the Wind River Reservation because land within the cession was not ceded to the public domain?

Whether it is necessary to succeed from an individual allottee, as opposed to the Tribes as sovereigns, to obtain a reserved right priority date under the evidentiary standard of the *Walton* cases?

LeClair Irrigation District, appellant in Case No. 94–60, presents the following issue for review:

The District Court erred in holding as a matter of law, that only grantees of Indian Allottees are entitled to seek a treaty based priority date of July 3, 1868.

The individual and corporate appellants, in Case No. 94–61, set forth this single issue:

Should lands lying within the Second McLaughlin Agreement, 33 Stat. 1016 (1905) not acquired from Indian allottees, be awarded a reserved water right?

Appellant in Case No. 94–62, G.A. Brown Testamentary Trust, specifies the issues in this manner:

I. Did the Court err in finding that the predecessors to the Brown Trust derived their title under various federal homestead programs rather than from the Tribes through the 1905 Act?

II. Did the District Court err, as a matter of law, in holding that the Brown Trust was not entitled to claim an 1868 date of priority for non-allotment lands within the original boundary of the Wind River Indian Reservation?

In the Brief of Appellees Big Horn Canal Association, Bluff Irrigation District, Fritz Ditch Company, Hanover Canal Company, Highland Hanover Irrigation District, Kirby Ditch Company, Inc., Lower Hanover Canal Association and the Upper Bluff Irrigation District (Worland Irrigators), the issue is stated as:

Are "Super" *Walton* claims cognizable under Wyoming law?

Appellees, Eastern Shoshone and Northern Arapaho Tribes, in their consolidated brief for all of these cases, do not separately set out the issue in their brief but it can be gleaned from section "II. SUMMARY OF ARGUMENT" which states:

The Tribes agree with the District Court that "super-*Walton*" claims have no basis under either the law of federal reserved water rights or the law of this case.

The United States of America, in its Brief of Appellee, states the issue more precisely as:

Whether landowners whose titles are derived from patents issued under the federal Homestead Act of May 20, 1862, 12 Stat. 391, [sic] 43 U.S.C. 161 *et seq.*; Pre-emption/Cash Entry Act of April 24, 1820, 3 Stat. 566; Desert Land Act of March 3, 1877, 19 Stat. 377, 43 U.S.C. 321 *et seq.*, or Reclamation Act of 1902, 43 U.S.C. 371, *et seq.*, can validly assert claims to an Indian reserved water right under the Treaty of Ft. Bridger of 1868, 15 Stat. 673.

In the Response Brief of Appellee State of Wyoming, the issue presented for review is stated in this way:

In determining whether Appellants are "similarly situated" to allottees' grantees, is it necessary under the circumstances of this case to revisit the question of disestablishment of the reservation?

tities, and a trust, all owning land situated in Wyoming Water Division No. 3 which is known as the Big Horn River System. The appellees, who claim water rights on the Big Horn River System, include downstream canal associations or companies, irrigation districts, ditch companies (collectively Worland Irrigators), and the Eastern Shoshone and Northern Arapaho Indian Tribes (Tribes). The United States of America and the State of Wyoming also appear as appellees.

After the decision of this court in *In Re Big Horn River System*, 803 P.2d 61 (Wyo. 1990) (*Big Horn II*), the special master appointed to serve the district court in this adjudication issued a public notice quoting from our opinion and stating in pertinent part:

> NOTICE IS HEREBY GIVEN that on November 30, 1990, the Wyoming Supreme Court ordered that certain parties are entitled to reserved water rights with a priority date of July 3, 1868: ·
>
> > [A]ll parties who have appeared in the case, [General Adjudication of the Big Horn River] at least to the extent of filing an answer, and have not been subsequently dismissed, are entitled to the application of any rule that has become the law of the case, no matter how that rule has been established and without regard to whether those parties did or did not participate in the proceedings in which it was established.
>
> > \* \* \* \* \* \*
>
> > [W]e hold that all parties who have similar interests to the claims of the Webbers, Jones, and Graboski are entitled to the benefit of the rule of law established in the prior case.
>
> > \* \* \* \* \* \*
>
> > Both Indian allottees and non-Indian successors of Indian allottees are entitled to reserved water rights with treaty

priority dates for the practicably irrigable acreage they are able to demonstrate was either irrigated by their Indian predecessors or put under irrigation within a reasonable time after it was conveyed. *In Re Big Horn River System*, 803 P.2d 61, 69–70 (Wyo.1990).

All persons wishing to file a claim for such water rights are hereby notified to come forth and file their claims.

Following this notice, 423 new claims to reserved water rights were presented in the district court. The appellants filed eighty-five of those claims which relate to the following summary of land:

| | |
|---|---|
| Inside current boundaries of the Wind River Indian Reservation | 86,562.08 acres [3] |
| Outside | 11,977.37 acres [4] |
| | 98,539.45 acres [5] |

The current appropriation dates for water rights appurtenant to these lands according to the records of the State Engineer range from 1889 to 1983, but most of them have priority dates from the early 1900s. Objections to the appellants' claims were filed by the appellees in accordance with the language of paragraph eleven of the Order Adopting *Walton* Procedures:

> 11. OBJECTIONS TO CLAIM. Any person, corporation or association of persons owning a valid right to use water from any affected source involved in the adjudication or any party in this case may object to a claim, provided a notice of objection is filed with the Washakie County District Court Clerk within thirty (30) days of publication of the Staff report. At the same time, copies of the notice of objection shall be mailed to the Special Master and the *Walton* water right claimant(s). \* \* \*

---

3. Includes land within the "ceded" portion of the Reservation—Second *McLaughlin Agreement*, 33 Stat. 1016 (1905).

4. Includes land in the *Brunot Agreement*, 18 Stat. 291 (1874)—"Lander Purchase," and First *McLaughlin Agreement*, 30 Stat. 93 (1897)— "Thermopolis Purchase."

5. All of these figures are necessarily approximate. The smallest claim related to fourteen acres, while the largest related to 73,110.2 acres. Three claims by Midvale, Riverton Valley, and LeClair Irrigation Districts total 82,686.2 acres. Some of the claims omitted title source and acreage.

In accordance with the Order Adopting *Walton* Procedures a hearing was held, and the Worland Irrigators then filed a motion for summary judgment asking the court to deny all claims for a July 3, 1868 priority date for water rights that were not traceable to land previously owned by an Indian allottee. Other parties filed a motion for summary judgment and for judgment on the pleadings and various other pleadings, including a motion to strike, a motion to dismiss claim, and a motion to estop the motion to strike. The trial court granted the motion for summary judgment presented by the Worland Irrigators, and that ruling essentially subsumed the other pending motions.

The Judgment and Decree entered by the trial court articulated these Findings of Fact:

1. The *Walton* right claims described in the Worland Irrigators' Motion for Summary Judgment and Lorna Babby's affidavit are based on title acquired under various federal programs, including the Homestead Act, the Cash Entry Act, the Desert Land Act and the Federal Reclamation Act.

2. With the exception of some unknown amounts of land included in several of the *Walton* right claims, none of the land can be traced back to an Indian allotment.

The Conclusions of Law that followed are:

1. Only land that was once an Indian allotment can be awarded a reserved water right.

2. Claims based on title acquired under such federal programs as the Homestead Act, the Cash Entry Act, the Desert Land Act and the Federal Reclamation Act are not entitled to a reserved water right.

3. The pleadings, together with affidavits, show there are no genuine issues as to any material fact.

4. The Worland Irrigators are entitled to judgment as a matter of law.

These appeals are taken from this Judgment and Decree.

The resolution of this case is controlled by our decision in *In Re Rights to Use Water in Big Horn River,* 753 P.2d 76 (Wyo.1988) (*Big Horn I*) and *Big Horn II.* In *Big Horn I,* we reviewed the decision of the district court adopting the recommendations of the special master, which was premised upon the Treaty of Ft. Bridger establishing the Wind River Indian Reservation, signed on July 3, 1868; the decision in *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), and An Act to Provide for the Admission of the State of Wyoming Into the Union, and for Other Purposes, 26 Stat. 222, Ch. 664 (July 10, 1890). We affirmed the decision of the district court that whenever the federal government withdrew land from the public domain it reserved water essential to serve the purpose for which the land was withdrawn. We held the water right impliedly reserved for the Wind River Indian Reservation was the product of the Treaty of Ft. Bridger and had a priority date of July 3, 1868. In addition, we held water rights appurtenant to land held in fee by individual Indians and appurtenant to land which never had left Indian ownership were entitled to the priority date of July 3, 1868.

We adopted the rule articulated in *Colville Confederated Tribes v. Walton,* 647 F.2d 42 (9th Cir.1981), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981). That rule states Indian and non-Indian successors of Indian allottees are entitled to a priority date for reserved water rights which is the same as the date of the treaty. Those rights attach to the practicably irrigable acreage which was irrigated or put under irrigation within a reasonable time following the treaty. The non-Indian successors of Indian allottees must demonstrate their Indian predecessors met those standards and, if that is established, their water rights carry the priority date of July 3, 1868.

In deciding *Big Horn II* two years later, we acknowledged the rules articulated in *Big Horn I.* We then said:

The impact of this decision [*Big Horn II*] is simply that all parties who have appeared in the case, at least to the extent of filing an answer, and have not been subsequently dismissed, are entitled to the application of any rule that has become the law of the case, no matter how that rule has been established and without regard to

whether those parties did or did not participate in the proceedings in which it was established. Fundamental fairness in accord with due process allows no other result. U.S. Const. amend. XIV, § 1.

*Big Horn II,* 803 P.2d at 69.

The theme of the arguments of the several appellants in the cases now before us is that all water rights are appurtenant to and attach to land. They urge the proposition that the ceded portions of the Wind River Indian Reservation never were declared part of the public domain and, therefore, water rights appurtenant to those lands were not subject to regulation by the State Engineer. They argue such rights always remained as reserved water rights. They argue that even though their lands were acquired from the United States, acting as a trustee for the Tribes, the legal titles were derived from the Tribes. The crux of the argument is that there is no basis in law for distinguishing between the lands they own on the ceded portion of the Wind River Indian Reservation and the retroceded and reacquired lands the Tribes own on the ceded portion.

They also argue no basis exists for distinguishing between *Walton* rights derived from Indian allottees and water rights appurtenant to lands acquired from the Tribes in their role as sovereigns. They contend fairness and equity require that the reserved water rights should have parity, whether derived from Indian allottees or from ownership by the Tribes.

In addition, they insist termination or diminution of Indian rights demands express legislative intent. They assert specific legislation is required to abrogate reserved rights without regard to the fact that the land was ceded to the United States and then held in trust for the Tribes, and without regard to the fact that the lands to which the water rights are attributable were obtained under such federal programs as the Homestead Act, the Pre-emption/Cash Entry Act, the Desert Land Act, and the Federal Reclamation Act.

Midvale presents a very specifically tailored argument. Midvale urges, "[t]he principal error in the district court's ruling in the present case is that there is no basis for distinguishing between *Walton* rights derived from allottees and from the Tribes as sovereigns." To support this contention, Midvale says the prior adjudication has recognized the 1868 priority date for lands obtained from Indian allottees and for reacquired lands. Midvale recognizes that the reacquired land was not purchased from an individual allottee.

Reacquired land in this context describes land either purchased by the Tribes or retroceded to the Tribes. We distinguish ceded lands and reacquired lands in *Big Horn I,* 753 P.2d at 114:

> Because all the reacquired lands on the ceded portion of the reservation are reservation lands, the same as lands on the diminished portion, the same reserved water rights apply. Thus, reacquired lands on both portions of the reservation are entitled to an 1868 priority date.

In entering its Judgment and Decree, the district court relied upon evidence presented by the attorney for the Worland Irrigators. That evidence summarized data taken from the court records which encompassed information provided by the appellants. The data disclosed all the claims were based on titles acquired under one or more of the following federal programs: Homestead Act of May 20, 1862, 12 Stat. 392, 43 U.S.C. § 161, *et seq.;* Pre-emption/Cash Entry Act of April 24, 1820, 3 Stat. 566; Desert Land Act of March 3, 1877, 19 Stat. 377, 43 U.S.C. § 321, *et seq.;* or Federal Reclamation Act of 1902, 43 U.S.C. § 371, *et seq.*

The data presented by the attorney for the Worland Irrigators was supported by the water rights specialist for the Bureau of Indian Affairs in Billings. That individual reviewed records of the Wyoming State Engineer's Office, title information included with the motion for summary judgment filed by the Worland Irrigators, the claim forms and the title information included with the claim forms, and a Bureau of Indian Affairs Land Status Plat Book for the Wind River Indian Reservation. The water rights specialist identified 169 claims as to which the title could not be traced to an Indian allotment. That list included all eighty-five of the *Wal-*

ton right claims described by the attorney for the Worland Irrigators.

None of the parties who are appealing the Judgment and Decree contested or refuted this evidence. The appellants argue portions of the land in dispute are located within the boundaries of the Wind River Indian Reservation, such as those in the Riverton Valley Irrigation District. They contend other portions of the land in dispute are located wholly outside the existing reservation such as those in the Midvale Irrigation District. They urge consistent treatment of the priority dates for water rights on all such lands whether owned by the Tribes or by successors to the title of lands once owned by the Tribes. The location of the lands is not material to our resolution of this case; the material fact is whether they can be traced to ownership by an Indian allottee.

The more telling logic goes back to *United States v. Anderson*, 736 F.2d 1358 (9th Cir. 1984), and *Colville Confederated Tribes v. Walton*, 460 F.Supp. 1320, 1328 (E.Dist. Wash.1978) (*Walton I* ), with the result that the purpose for which the reserved water was recognized no longer exists with respect to lands no longer owned by the Tribes and, consequently, the priority date established by the treaty does not govern them. The claim that the reserved right is appurtenant to the land purchased is not a sufficient justification for maintaining the priority date when the Tribe, in effect, agrees it no longer needs the land for purposes of a reservation. At that point, the reserved right is extinguished.

We elaborate upon the decisions of other courts which have considered and rejected the concept of any "super-*Walton*" claims. In *Anderson*, 736 F.2d at 1363, the court stated:

> This result [rejecting "super-*Walton*" rights] is supported by the fact that *Winters* rights were only intended to assist in accomplishing the needs of the reservation; where the land has been removed from the Tribe's possession and conveyed to a homesteader, the purposes for which *Winters* rights were implied are eliminated. *Winters v. United States*, 207 U.S. at 577, 28 S.Ct. at 211.

In *Walton I*, 460 F.Supp. at 1329, the court said this:

> While it is not clear whether the surplus lands within the reservation became part of the public domain when they were opened for settlement, *Seymour [v. Superintendent]*, *supra*, 368 U.S. [351] at 355–56, 82 S.Ct. 424, [at 426–27] [7 L.Ed.2d 346 (1962) ], and thus whether the Desert Land Act applied to those lands, strong policy arguments militate against implying reserved water rights for homesteaded surplus lands. To allow homesteaders to share in the reservation's reserved water rights would greatly diminish a valuable Indian asset. The General Allotment Act and the 1906 Act cannot be interpreted as giving non-Indian settlers a share of the Indians' reserved water rights, for such a Congressional intent is not clear, and the general rule of interpreting acts affecting Indians requires that "[d]oubtful expressions are to be resolved in favor of the weak and defenseless people who are the wards of the nation, dependent upon its protection and good faith." *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 174, 93 S.Ct. 1257, 1263, 36 L.Ed.2d 129 (1973), quoting *Carpenter v. Shaw*, 280 U.S. 363, 367, 50 S.Ct. 121, [122,] 74 L.Ed. 478 (1930).

We perceive the statements by these courts as sound logic. Our first decision in this case held that the Treaty of Ft. Bridger impliedly reserved water for the Wind River Indian Reservation and for the Tribes and the Indian allottees to pursue agriculture. *Big Horn I*. When the Tribes ceded their land to the United States for sale, the reserved water right disappeared because the purpose for which it was recognized no longer pertained. That purpose no longer existed for lands acquired by others after they had been ceded to the United States for disposition. The effect is that the reserved water rights were eliminated as to those tracts.

We apply the law of the case as established in *Big Horn I* and *Big Horn II*. To review the earlier holdings as they settle the law of the case, the treaty priority date attached to reserved water rights. Following federal

precedent, the Indian allottees were entitled to participate in the use of the reserved water. When they did so, the reserved right became appurtenant to the individual allotment.[6] The clear implication of our prior holdings is that only the Tribes, Indian allottees, and successors in title of Indian allottees could have the July 3, 1868 treaty priority date. The record discloses, without conflict, that none of the appellants are successors in title of Indian allottees. It follows, from the language of *Big Horn I,* that none of these appellants were entitled to a reserved water right with a treaty priority date of 1868.

These appellants have not demonstrated they are "similarly situated" to *Walton* claimants as those were defined in *Big Horn II.* The law does not support the contention that Congress intended reserved water rights to be received by those who succeeded to title from sources other than Indian allottees. As we have noted in *Big Horn I,* the priority date for the reserved water rights was extended to the diminished portion of the reservation; restored, retroceded, undisposed of, and reacquired lands owned by the Tribes; fee lands held by Indian allottees; and lands held by Indian and non-Indian successors to allottees. That is the limit for the July 3, 1868 priority for water rights.

The trial court correctly found there is no genuine issue of any material fact in this instance. The Worland Irrigators were entitled to judgment as a matter of law. We affirm the Judgment and Decree which ruled that none of the land involved in these cases is entitled to a July 3, 1868 priority date under the treaty. The priority dates for these water rights must be established by the records of the State Engineer in granting a permit to use the water.

Affirmed.

---

**6.** If successors in title to Indian allottees had been denied the treaty priority date for water rights appurtenant to the lands they purchased, the value of those lands would have been significantly diminished.