Terry CATLIN and JoAnn Lindquist,
Plaintiffs–Appellants,

v.

TORMEY BEWLEY CORPORATION,
d/b/a Advantage Network Systems,
Inc., Defendant–Appellee.

No. 08CA1056.

Colorado Court of Appeals,
Div. IV.

May 28, 2009.

As Modified on Denial of Rehearing
July 23, 2009.

Killian, Jensen & Davis, P.C., J. Keith Killian, Damon Davis, Nicholas W. Mayle, Grand Junction, Colorado, for Plaintiffs–Appellants.

Spiecker, Hanlon, Gormley & Volkmann, LLP, Thomas C. Volkmann, Grand Junction, Colorado, for Defendant–Appellee.

Opinion by Judge WEBB.

In this Equal Pay Act (EPA) case, 29 U.S.C. § 206(d), plaintiffs, Terry Catlin and JoAnn Lindquist, appeal the amount of the trial court's attorney fees and costs award against defendant, Tormey Bewley Corporation, d/b/a Advantage Network Systems, Inc. (ANS). We affirm the attorney fees award and denial of costs for interest on loans used to finance the litigation, an expert witness's fees, and wages lost by witnesses; reverse the order refusing to award any costs under section 13–17–202, C.R.S.2008; and remand for consideration of other costs under that section.

## I. Introduction

Catlin and Lindquist sued their former employer, ANS, for various violations of federal and state law. Only Catlin prevailed and her success was limited to an EPA claim, on which the jury awarded her $75,000.00. The trial court concluded that the evidence supported only an award of $12,594.34 and ordered a new trial on damages. After the parties stipulated to actual damages of $30,000.00, the court awarded Catlin an additional $30,000.00 in liquidated damages under 29 U.S.C. section 216(b).

Both parties appealed various aspects of the jury verdict and related trial court rulings, which were affirmed in *Catlin v. Tormey Bewley Corp., a/k/a Advantage Network Systems, Inc.*, 2009 WL 1337177 (Colo.App. No. 08CA0437, May 14, 2009) (not published pursuant to C.A.R. 35(f) ) (*Catlin I* ). At oral argument, Lindquist acknowledged that she joined in this appeal solely to preserve her position if *Catlin I* had reversed.

Initially, Catlin sought $257,557.00 in attorney fees under the Fair Labor and Standard Act (FLSA), 29 U.S.C. § 216(b), and $45,828.68 in costs as the prevailing party under sections 13–16–104, –122(1), and 13–17–202(1)(a)(I), C.R.S.2008, and 29 U.S.C. section 216(b). After reaching the stipulation on actual damages, Catlin submitted an updated request for $342,352.76 in attorney fees and $59,975.16 in costs, reflecting post-trial work and a $7,569.00 reduction for work on Lindquist's claims.

The court awarded Catlin attorney fees of $154,058.74. It also awarded her $24,619.65 in costs under section 13–16–104, but held that she was not entitled to "actual costs" under section 13–17–202(1)(a)(I) because the final judgment of $60,000.00 did not exceed either of her statutory settlement offers.

Noting that the trial court had not included Catlin's pre-offer attorney fees when calculating the final judgment, she moved the court to reconsider its ruling on section 13–17–202(1)(a)(I) and amend the judgment to award additional costs. After expiration of the sixty-day period prescribed by C.R.C.P. 59(j), the court granted this motion and awarded costs for travel expenses of and wage losses suffered by certain witnesses.

## II. Attorney Fees

█ Catlin contends the trial court erred by excessively reducing her attorney fees claim. We disagree.

The FLSA, which includes the EPA, provides that "[t]he [trial] court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

█ "[A] plaintiff's entitlement to … a fee is governed by federal law" where a federal statute authorizes attorney fees. *Langseth v. County of Elbert*, 916 P.2d 655, 657 (Colo.App.1996); *cf.* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2669, at 254 (3d ed.1998) (concluding in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), context that "[t]o the extent that fees are authorized by federal statute … federal law should govern."); *but see Major v. Chons Bros., Inc.*, 53 P.3d 781, 788 (Colo.App.2002) (analyzing state cases to uphold attorney fees award under 29 U.S.C. § 216(b) ).

█ "The district court has considerable discretion in determining the size of a fee award, as is appropriate given the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Dalal v. Alliant Techsystems,*

*Inc.*, 182 F.3d 757, 760 (10th Cir.1999) (internal citations and quotations omitted). The party seeking attorney fees bears the burden of showing that the hours asserted are reasonable. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

■ When determining an attorney fees award under the FLSA, the trial court should follow the procedure described in *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983). *See Lamon v. City of Shawnee, Kan.,* 972 F.2d 1145, 1159 (10th Cir.1992). This process starts with calculating the lodestar amount by multiplying the number of hours reasonably spent by counsel for the party seeking the fees times a reasonably hourly rate. *Case v. Unified School Dist. No. 233, Johnson County, Kan.,* 157 F.3d 1243, 1249 (10th Cir.1998). The court may then adjust the lodestar up or down by taking into account several factors, including "the degree of success obtained," which is "the most critical factor." *Ramos,* 713 F.2d at 556 (quotations and citation omitted); *see also Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (listing other factors).

Here, in a detailed and well-reasoned order, the trial court analyzed the following factors when arriving at its attorney fees award: (1) the amount in controversy, (2) the time required to effectively represent the client, (3) the complexity of the case, (4) the value of the legal services to the client, and (5) the customary practice in the legal community regarding fees in similar cases, citing *Hartman v. Cmty. Responsibility Ctr.,* 87 P.3d 254, 257 (Colo.App.2004).

Although the court followed decisions from divisions of this court rather than federal law, the factors under federal and state law for determining the reasonableness of an attorney fees claim are similar. *Compare Hartman,* 87 P.3d at 257, *and* Colo. RPC 1.5(a), *with Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933. To the extent that the trial court did not explicitly address every factor which arises under the federal analysis, such findings are unnecessary. *See Gudenkauf v. Stauffer Commc'ns, Inc.,* 158 F.3d 1074, 1083 (10th Cir.1998).

The court concluded that Catlin had "achieved substantial success on a significant claim" and that the hourly rates her attorneys charged were reasonable, but also found that "most of the evidence on [Catlin's] unsuccessful breach of contract, promissory estoppel, age discrimination, quid pro quo discrimination and hostile work place [sic] claims had nothing to do with her successful Equal Pay Act claim." It added that much of the complexity of the case was "manufactured by Plaintiff's counsel" and "simply unnecessary."

The court explained its $154,058.74 attorney fees award as follows:

> I reach this result by roughly approximating that one third of [Catlin's] attorneys' time was spent on her claims, one third on Lindquist's claims and one third overlapped. Of the two thirds spent wholly or partly on Plaintiff's claims ... one third was spent on her successful claim, one third on her unsuccessful claims, and one third overlapped.

Thus, Catlin was awarded two-thirds times two-thirds of her claim, or approximately forty-five percent.

Catlin agrees that trial courts "may make a 'general reduction' in attorney fees, rather than a line by line determination," quoting *Gudenkauf,* 158 F.3d at 1083, and does not challenge the reduction of two-thirds times two-thirds. But she argues that the trial court violated *Carter v. Sedgwick County,* 36 F.3d 952, 957 (10th Cir.1994) by "correct[ing] twice for a single problem" when it excised fees related exclusively to work for Lindquist that Catlin had already removed in her updated fee request, and in applying the general reduction for Lindquist-only fees to posttrial work that was done mostly for Catlin.

Catlin's reliance on *Carter* is misplaced because it dealt with two reductions by the trial court that duplicated one another. 36 F.3d at 957 ("the court corrected twice for a single problem"). Here, Catlin first reduced the fees related to Lindquist in her updated fee request, followed by the trial court's reduction in a later order.

The court's calculation was based on Catlin's updated fee request. Thus, the court was

cognizant of, but apparently found insufficient, Catlin's comparatively small $7,569.00 reduction for the Lindquist-only claims. Its approach is consistent with a general reduction as contrasted with a line-by-line billing statement analysis.

Further, Catlin recognizes that her argument would increase the attorney fees award by approximately $3,400.00, which is less than three percent of the total award. Such a small anomaly in a general reduction case does not constitute an abuse of discretion.

Nor has Catlin shown that the trial court abused its discretion when it calculated the reduction for Lindquist-only claims because most of the post-trial work had been performed for Catlin. The trial court's written orders on representative post-trial filings, such as "Plaintiff Catlin's Motion for Liquidated Damages," "Plaintiff Catlin's Motion for New Trial Pursuant to C.R.C.P. 59," and "Plaintiff Catlin's Motion to Amend Findings and Judgment Re: Costs," demonstrate awareness that the post-trial phase dealt primarily with Catlin. The court's attorney fees order weighs Lindquist's complete failure on her claims, Catlin's limited success at trial, and her greater success post-trial. Catlin has not shown that the overall forty-five percent award failed to account for this disparity.

Accordingly, we conclude that the trial court did not abuse its discretion in reducing Catlin's attorney fees claim.

### III. Costs

Catlin next contends the trial court erred by not awarding her costs for interest on loans used to finance her case, fees for an expert witness, Dr. Charles J. Hobson, whose testimony was barred by the trial court, and miscellaneous witness expenses. We first consider each contention under the cost statute, section 13–16–122(1).

### A. Loan Interest

■ Whether accrued interest on loans taken out by prevailing parties to finance their cases may be recovered as a cost has not been addressed in Colorado. For the following two reasons, we conclude that such interest is not a recoverable cost as a matter of law.

■ First, although the cost items listed in section 13–16–122(1) are illustrative rather than exhaustive, *Cherry Creek School Dist. No. 5 v. Voelker*, 859 P.2d 805, 813 (Colo. 1993), to be awardable the expense must be "necessarily incurred by reason of the litigation and for the proper preparation for trial." *Mackall v. Jalisco Int'l, Inc.*, 28 P.3d 975, 977 (Colo.App.2001). Any necessity for a loan results primarily from the economic circumstances of the litigant, and only secondarily from what expenses the case requires. Further, a loan is not "preparation for trial." *Id.* Hence, Catlin's reliance on cases upholding cost awards for computerized legal research, *Roget v. Grand Pontiac, Inc.*, 5 P.3d 341, 348–49 (Colo.App.1999), temporary office accommodations, *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 390 (Colo. 1994), and discovery depositions, *Voelker*, 859 P.2d at 813–14, is misplaced.

■ Second, under section 5–12–102, C.R.S.2008, interest may be recovered on damages, but the statute does not allow for interest on costs. Colorado awards moratory interest on costs only in rare circumstances—not present here—where the costs constitute an item of special damages. *Farmers Res. and Irr. Co. v. City of Golden*, 113 P.3d 119, 133 (Colo.2005). Otherwise, however, awarding interest on costs is an abuse of discretion because "[c]osts are not damages, but a separate item of monetary relief." *Id.*

No economic reason justifies departure from *Farmers Res.* Both interest that otherwise could have been earned on money paid by a litigant for costs of litigation, as in that case, and interest paid by the litigant on a loan taken out to fund such costs, as here, involve the same time value of money. Our research discloses only two relevant cases outside Colorado, but neither persuades us otherwise. *Compare Wyatt v. Palmer*, 165 Vt. 600, 683 A.2d 1353, 1356–57 (1996) (allowing interest on loan used to finance case as cost under certain circumstances, but offering no analysis), *with Teague v. Bakker*, 213 F.Supp.2d 571, 581 (W.D.N.C.2002) (disallow-

ing such interest based on wording of federal cost statute, 28 U.S.C. § 1920).

## B. Dr. Hobson's Expert Witness Fees

Section 13–16–122(1)(e) allows the trial court to include in a cost award "[t]he witness fees, including subsistence payments, mileage at the rate authorized ... and charges for expert witnesses ...."

 In certain circumstances, a trial court may award costs for an expert witness who does not testify. *Bainbridge, Inc. v. Douglas County Bd. of Comm'rs*, 55 P.3d 271, 274 (Colo.App.2002). Examples include fees for experts hired to provide advisory or consulting services, *see, e.g., Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 38–39 (Colo.App.2004), and fees for experts "who did not testify because some extrinsic circumstance rendered their testimony unnecessary." *Clayton v. Snow*, 131 P.3d 1202, 1203 (Colo.App.2006) (citing 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2678, at 468 (3d ed.1998)). However, a trial court may not award costs for an expert "hired to testify but [who] does not because his or her testimony is inadmissible." *Clayton*, 131 P.3d at 1203.

In applying the distinction between expert testimony that has become "unnecessary" and such testimony that is "inadmissible" to Dr. Hobson, we consider the trial court's reasons for rejecting his testimony, based on the following decisions cited in *Clayton*.

Cost awards of expert fees were affirmed in *Wark v. McClellan*, 68 P.3d 574, 582 (Colo. App.2003), and *Mackall v. Jalisco Int'l, Inc.*, 28 P.3d 975, 977 (Colo.App.2001). The rulings in those cases making the experts' opinions unnecessary changed the postures of the cases from when the experts had prepared their reports. *See Wark*, 68 P.3d at 582 (toxicologist did not testify because trial court directed a verdict on allegedly drunken driver's impairment); *Mackall*, 28 P.3d at 977 (damages expert retained in connection with plaintiff's tortious interference claim did not testify because trial court directed a verdict on that claim).

Expert witness fees were rejected in *Perkins v. Flatiron Structures Co.*, 849 P.2d 832, 836 (Colo.App.1992), and *Dep't of Health v. Hecla Mining Co.*, 781 P.2d 122, 128 (Colo. App.1989). The rulings rejecting the experts' testimony did not change the postures of the cases from what they had been when the experts prepared their reports. *See Perkins*, 849 P.2d at 835 (expert's opinion partially excluded for failing to comply with disclosure requirements under C.R.C.P. 16(g) ); *Hecla*, 781 P.2d at 128 (experts' opinions dealt with damages that were not recoverable as a matter of law in condemnation proceedings); *accord City of Lakewood v. DeRoos*, 631 P.2d 1140, 1144 (Colo.App.1981).

Focusing on whether the ruling excluding the expert testimony changes the posture of the case preserves *Voelker's* requirement of "reasonable necess[ity] ... in light of facts known to counsel at the time...." 849 P.2d at 813. In this regard, because the *Perkins*, *Hecla*, and *DeRoos* rulings excluding the expert testimony did not change the postures of the cases, the bases for excluding the experts' testimony should have been known to the lawyers, the experts, or both well before the testimony was excluded.

 Here, the trial court excluded Dr. Hobson's testimony under CRE 402, 403, and 702, finding his opinions "probative of nothing" and "potentially misleading to the jury." This ruling, which is upheld in *Catlin I*, did not change the posture of the case, and Catlin's attorneys should have been able to identify the flaws in his report. Thus, Catlin is not entitled to a cost award for any portion of Dr. Hobson's fee as a testimonial expert.

*Bennett v. Hickman*, 992 P.2d 670 (Colo. App.1999), does not support Catlin because it addressed only whether the trial court's ad hoc credibility determination of an expert who had testified could support refusing to award costs. 992 P.2d at 673–74. Here, the trial court's "probative of nothing" finding bore directly on admissibility.

 Catlin's request for the portion of Dr. Hobson's fee attributable to consulting and other non-testimonial services is vested in the trial court's discretion. *See Steele v. Law*, 78 P.3d 1124, 1128 (Colo.App.2003).

The court found that Dr. Hobson's work "was of [no] significant assistance to Catlin's attorneys" and that he "contributed nothing to Plaintiff's case." As determined in *Catlin I*, these findings and the resultant exclusion of Dr. Hobson's testimony were not an abuse of discretion.

Further, the trial court rejected Catlin's claim that Dr. Hobson provided valuable consulting services because, "[b]ased on Plaintiff's attorneys' experience in this area ... they should not have needed much help." This reasoning is consistent with her counsel's self-described "considerable experience in litigating employment cases" in their original fee request, including "litigat[ing] the first Americans with Disabilities Act (ADA) case to reach the Colorado Supreme Court."

Accordingly, we agree with the trial court that Catlin is not entitled to costs for any portion of Dr. Hobson's expert witness fees.

### C. Lay Witness's Lost Wages

■ The trial court disallowed $1,993.76 for airfare, gasoline, and lost wages related to lay witnesses who traveled to testify and persons accompanying them, including one witness's young daughter and another witness's mother. Due to our limited remand for consideration of certain costs under section 13–17–202, *see* Parts IV. & V., *infra*, we address only the witnesses' lost wages, and conclude, as a matter of law, that such wage loss is not a recoverable cost.

Fees for testifying witnesses are provided in section 13–33–102, C.R.S.2008. While section 13–33–102(4) permits additional compensation for expert witnesses, no such exception exists for lay witnesses. We decline judicially to create one, particularly where it would have innumerable permutations based on idiosyncratic factors such as the witness's opportunity and willingness to recoup lost wages by working at some other time.

Further, as with loan interest, a witness's lost wages are not "necessarily incurred by reason of the litigation and for the proper preparation for trial" so as to be an awardable cost. *Mackall*, 28 P.3d at 977. A litigant who compels a witness's presence by subpoena is not required to recompense the witness for wage loss, but only to tender the witness fee and mileage. C.R.C.P. 45(c). Lost wages are incurred by reason of the witness's unique employment circumstances, and reimbursement is not necessary for trial preparation.

### IV. "Actual Costs" under § 13–17–202

■ Catlin next contends the trial court erred in the first order by failing to include pre-offer attorney fees when determining whether the final judgment exceeded her statutory settlement offers under section 13–17–202(1)(a)(I). We agree.

Section 13–17–202(1)(a)(I) provides:

[i]f the plaintiff serves an offer of settlement ... that is rejected by the defendant, and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be awarded actual costs accruing after the offer of settlement to be paid by the defendant.

■ "[I]n calculating whether a final judgment exceeds the amount of a settlement offer that did not specifically exclude costs, a trial court is to exclude post-offer attorney fees awarded as costs, but include pre-offer fees awarded as costs."[1] *Chartier v. Weinland Homes, Inc.*, 25 P.3d 1279, 1283 (Colo. App.2001). Thus, "[b]ecause the offer includes costs then accrued, to determine whether the judgment obtained is 'more favorable,' as the rule requires, the judgment must be defined on the same basis—verdict plus costs incurred as of the time of the offer of judgment." *Chartier*, 25 P.3d at 1283 (quoting *Marryshow v. Flynn*, 986 F.2d 689, 692 (4th Cir.1993)).

Here, in determining that her final judgment was $60,000.00, the trial court did not

---

1. In 2008, the General Assembly amended section 13–17–202 to require also including the plaintiff's pre-offer "actual costs" when calculating the final judgment amount. *See* § 13–17–202(1)(a)(II); *Novak v. Craven*, 195 P.3d 1115, 1122 (Colo.App.2008). However, this amendment does not affect our analysis because the final judgment exceeds Catlin's statutory settlement offers even without accounting for such costs, and the amendment applies only to offers made after July 1, 2008. *See id.*

include in the final judgment any of the pre-offer attorney fees it had awarded to Catlin. This error led the trial court to conclude that the final judgment did not exceed either of Catlin's statutory settlement offers of $90,000.00 or $85,000.00, thus preventing her from recovering "actual costs" under section 13–17–202(1)(a)(I).

Catlin's "Motion to Amend Findings and Judgment Re: Costs" correctly pointed out that even accounting for the court's fifty-five percent reduction, her attorney fees amounted to $51,206.24 as of the date of her first offer. But the trial court did not rule on this motion within the sixty days prescribed by C.R.C.P. 59(j), and thus as Catlin concedes it was deemed denied by operation of law.

We reject ANS's argument that the order partly granting Catlin's motion should be given legal effect because motions for costs are governed by C.R.C.P. 54, not C.R.C.P. 59, citing *Meier v. McCoy*, 119 P.3d 519, 527 (Colo.App.2004).

 Subject to appeal, an order awarding costs is enforceable as a judgment. *Massey v. David*, 953 So.2d 599, 601 n. 1 (Fla.Dist.Ct.App.2007) ("Separate costs judgments are regularly appealable as final judgments."), *aff'd*, 979 So.2d 931 (Fla.2008); *cf. Kennedy v. Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo.App.2003) ("[A]n award of attorney fees is distinct and separately appealable from the judgment on the merits."). Catlin's motion was framed as a motion to amend the findings and judgment on costs, as provided in C.R.C.P. 59(a)(3) and (a)(4), respectively, and it was filed within fifteen days of the trial court's cost order, as required by C.R.C.P. 59(a). The substance of Catlin's motion asked the trial court to reconsider its cost award. Reconsideration motions, although discouraged, can be treated under C.R.C.P. 59. *Stone v. People*, 895 P.2d 1154, 1155–56 (Colo.App.1995).

Accordingly, we reverse the trial court's initial order to the extent it concluded that the final judgment did not exceed Catlin's settlement offers, and remand the case for further proceedings on Catlin's reasonable "actual costs" under section 13–17–202(1)(a)(I), except as limited by the following section of this opinion.

### V. Issues on Remand

Because the issues will likely arise on remand, which Catlin's Opening Brief acknowledges, we address whether $1993.76 of Catlin's reimbursement costs are, as a matter of law, recoverable as "actual costs" under section 13–17–202(1)(b). *See Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1118 (Colo.1990) (addressing issues likely to arise on remand in interest of judicial economy).

Initially, we reject Catlin's assertion that ANS's failure to cross appeal the award of these costs in the second order requires us to direct the trial court on remand "to add this amount to the cost judgment." First, Catlin has not asked us to affirm this order in part, but rather describes it as "without effect," with which, as discussed *supra*, we agree. Second, having determined that the entire issue of actual costs must be revisited because of error in the initial order and untimeliness of the second order, ANS's failure to cross appeal does not limit the remand. Third, ANS's statement that the issue of witness expenses is moot, which Catlin emphasizes, rests on its argument that the second order is valid, which we have rejected.

 Section 13–17–202(1)(b) provides in pertinent part:

'actual costs' ... shall mean costs actually paid or owed by the party, or his or her attorneys or agents, in connection with the case, including but not limited to filing fees, subpoena fees, reasonable expert witness fees, copying costs, court reporter fees, reasonable investigative expenses and fees, reasonable travel expenses, exhibit or visual aid preparation or presentation expenses, legal research expenses, and all other similar fees and expenses.

"The trial court has no discretion to deny an award of actual costs under this statute, so long as it determines that those costs are reasonable." *Bennett*, 992 P.2d at 673. What amounts to a reasonable cost under section 13–17–202 is committed to the trial court's sound discretion and will not be overturned absent an abuse of that discretion. *See Clayton*, 131 P.3d at 1203.

Like section 13–16–122(1), use of the word "including" in section 13–17–202(1)(b) means that the items of "actual costs" listed are illustrative rather than exhaustive. *See Voelker*, 859 P.2d at 813. But unlike section 13–16–122(1), the phrase "and all other similar fees and expenses" at the end of section 13–17–202(1)(b) suggests a limitation to the categories of items that may be recovered as "actual costs." *See Estate of Jordan by Dodds v. Estate of Jordan by Gardner*, 899 P.2d 350, 351 (Colo.App.1995) (interpreting "similar" to mean "comparable" or "corresponding," and concluding it limited probate magistrate's powers).

We conclude that the costs for a witness's airfare could be "reasonable travel expenses" under section 13–17–202(1)(b), even if the airfare exceeds the mileage reimbursement rate provided in section 13–33–103, C.R.S.2008, depending on the circumstances that led the witness to travel by air and the type of arrangements chosen. *See* § 13–17–202(1)(a) ("Notwithstanding any other statute to the contrary. . . ."). The same would be true of "gasoline money," even if it exceeded the mileage fees provided in section 13–33–103, which is not determinable from the record. Therefore, on remand the trial court should make findings on the reasonableness of such costs claimed by Catlin.

We further conclude that because the expenses of a traveling companion are "similar" to "reasonable travel expenses" and this phrase is not limited to such expenses of a witness, under unusual circumstances traveling companion expenses could be awarded under section 13–17–202(1)(b). Hence, the trial court should also make findings regarding the need for the mother's and daughter's presence, as well as the reasonableness of their travel arrangements.

In contrast, nothing in the wording of section 13–17–202(1)(b) persuades us to revise our conclusions that loan interest and witnesses' lost wages are not recoverable, as a matter of law, as explained in Parts III(A) & (C), *supra*. Loan interest and such lost wages are not "similar" to the items of "actual costs" listed in section 13–17–202(1)(b), all of which are paid directly to or for the service used.

The order is affirmed in part, reversed in part, and the case is remanded to the trial court with directions.

Judge CARPARELLI and Judge LICHTENSTEIN concur.