No. 18,995.

ROYLE C. WILLIAMS, ET AL. *v.*
CITY AND COUNTY OF DENVER.
(363 P. [2d] 171)

Decided July 3, 1961.

Mr. FRED M. WINNER, Mr. WILLIAM G. BERGE, Mr. WARREN O. MARTIN, for plaintiffs in error.

Mr. DONALD E. KELLEY, Mr. EARL T. THRASHER, Mr. HANS W. JOHNSON, for defendant in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. JOHN P. HOLLOWAY, Chief Highway Counsel, Assistant Attorney General, Amici Curiae.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE parties appear here in reverse order of their appearances in the trial court and will be designated as they there appeared.

Defendants were the joint owners of two parcels of property. These two tracts *in their entirety* were required for the construction of the Valley Highway within the city limits of Denver. The property was located in what is now known as the Speer Boulevard Interchange. The line of the highway and the property needed for it, including the entire tract owned by defendants, was spelled out in Ordinance No. 86, which became effective on July 10, 1947.

The city filed its petition in condemnation on June 2, 1955, after negotiations to purchase had proved futile.

Pursuant to an order of the trial court, plaintiff was awarded possession of defendants' property on September 10, 1955, and has been in possession since that date. On May 14, 1956, trial was commenced, which ended in a mistrial. On July 23, 1956, a second trial was commenced. Following a jury verdict, a motion for new trial was granted. On December 9, 1958, the matter came on for trial a third time. On this occasion a pre-trial order was stipulated by the parties, providing that a jury be waived and the matter tried before a Commission. As to other matters the defendants stipulated only as to form. After receiving instructions from the trial court the Commission awarded defendants the sum of $31,850.00. Motion for new trial was dispensed with, and final judgment entered. Defendants now question the adequacy of this award by writ of error directed to the judgment.

The parties agree on three issues presented by this writ of error as follows:

1. Where, at the time of trial, because of the announcement or the construction of a public improvement, there has been an enhancement of (or a depreciation in) surrounding property values, should that enhancement or depreciation be taken into account in determining the award for adjacent property taken in its entirety for the public improvement?

2. Where the zoning of surrounding property has been changed between the date of filing the petition in eminent domain and the date of trial, should the property to be taken in its entirety be valued under the zoning in existence at the time of filing the petition, or under the zoning at the time of trial?

3. Where the condemning authority has taken possession of a defendant's property and has made a deposit in court, does the condemning authority owe interest on the award from the date of possession or the date of the judgment?

Before discussing these points, it may be well to note,

as a caveat for future actions, that in a recent session the legislature of this state enacted a statute which applies to all three issues raised here. Under the terms of this legislation amending C.R.S. '53, 50-1-17, the amount of compensation in condemnation cases in the future shall be determined as of the date of taking actual possession, or the date of trial or hearing, whichever is earlier. In 1961 the legislature enacted a new statute known as C.R.S. '53, 50-1-20, which provides that where possession of the property shall have been previously taken by the condemning authority, the court shall add to the amount of any such award interest at the rate of six per cent per annum from and after the date of such possession to the date such award is entered. Needless to say, the present situation is not covered by this legislation.

We shall now proceed to discuss each of the above three issues. The first relates to the matter of enhancement of the property as a result of the proposed construction. The pre-trial order of the trial court contains the following paragraph:

"(b) Sales of all properties in the neighborhood, made since the date of possession of this property was awarded to Petitioner, all reflect an enhancement in value resulting from the proposed construction of the public work, and the expert appraisers for the parties each has a substantial difference in his individual opinion as to the value of this property depending on whether such enhancement in value is or is not taken into account."

The trial court then excluded all such evidence of enhancement in value. Defendants take issue with this ruling. They urge that full consideration must be given to any enhancement in value resulting from the construction of the public work. Defendants also urge that in the event of condemnation a property owner is entitled to the fair market value of his property at the time of trial. Their interpretation of the latter point is a

correct one, or was prior to the recent enactment of the legislature. See C.R.S. '53, 50-1-17, before the amendment, supra, and see *Union Co. v. Moffat District* (1939), 104 Colo. 109, 89 P. (2d) 257. However, to say that value is to be fixed at the time of trial does not mean, as defendants contend, that the court must give consideration to enhancement resulting from construction or proposed construction of public improvements on the property subject to condemnation. To do so would allow speculative considerations to determine value and provide a windfall for the property owner. The courts will not sanction such considerations. See *Wassenich v. Denver* (1919), 67 Colo. 456, 186 Pac. 533.

In urging their position for such enhancement, defendants have misapprehended the very nature of a condemnation action. Speaking for the United States Supreme Court in a leading case, Mr. Justice Holmes said:

"And the question is, What has the owner lost, not, what has the taker gained." *Boston Chamber of Commerce v. Boston* (1910), 217 U.S. 189, 195, 30 S. Ct. 459.

Thus value to the taker, or to his neighbors, must be rejected as the measure of compensation.

In *Searl v. School District No. 2, Lake County* (1890), 133 U.S. 553, 562, 10 S. Ct. 374, which concerned a condemnation situation arising in Colorado, the United States Supreme Court stated as follows:

" * * * it is the duty of the State, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it."

What then is just compensation? We have held that market value ordinarily means the price the property would bring if sold in the open market under ordinary and usual circumstances, for cash, assuming that the owner is willing to sell and the purchaser willing to buy, but neither under any obligation to do so. *Wassenich,* supra. Under this test it is obvious that just compensation cannot include any increment arising from the

very fact of acquisition of the subject property. If the land were sold in the open market under ordinary and usual circumstances, factors relating to public acquisition would have to be excluded from consideration. In such a case there would be no condemnation at issue.

This principle was stated in *Union Co.,* supra, where this court cited with approval the ruling in *Olson v. United States* (1934), 292 U.S. 246, 54 S. Ct. 704, wherein it was stated:

" * * * As just compensation includes no increment resulting from the taking, petitioners were not entitled to elements of value arising from the prospect that the Government would acquire the flowage easements. Under the circumstances, intention to acquire was the equivalent of the formal designation of the property to be taken. Prices actually paid, and estimates or opinion based, upon the assumption that value to owners includes any such elements are not entitled to weight and should not be taken into account."

There are, of course, exceptional situations where the courts will admit evidence of enhancement resulting from the acquisition. They include cases where the location of the proposed project is indefinite or where there is a supplemental taking. See 4 *Nichols on Eminent Domain,* pp. 122-130. However, there is nothing in the record to bring this case within any of the recognized exceptions to the rule.

It is our conclusion that the trial court was correct in excluding all evidence relating to enhancement in value as a result of the acquisition of the subject property.

Secondly, defendants argue that where there is a change in the zoning of surrounding property between the date of filing the petition in eminent domain and the date of trial, that the valuation of the subject property should reflect such change. With this reasoning we are unable to agree.

As defendants suggest in their brief, the ruling of the trial judge on this point was a refinement of his ruling

on the previous issue submitted to us. Paragraph C of the pre-trial order reads as follows:

"No evidence of a probability of a change of zoning of adjacent property (even though such probability of change of zoning is reflected in the value of such properties) shall be admissible if such probability of change in zoning arose subsequent to the filing of this action as a result of the proposed construction or actual construction of the public work."

We reach this decision by virtue of the same authority that led us to our conclusion on the first issue — if the rezoning happened to devalue the property instead of raising it, as defendants contend here, then it obviously would be unjust to defendants to assess such diminution against them. Fair compensation in condemnation cases does not include speculative values either lowering or raising the compensation to be paid.

As is said in 4 *Nichols on Eminent Domain*, p. 122:

"It rarely happens that proceedings for the condemnation of land for the public use are instituted without months, years, and, in some instances, decades of time spent in preliminary discussion and in the making of tentative plans. These discussions and plans are usually known to the owners and other persons interested in land in the vicinity of the proposed improvement, and are matters of common talk in the neighborhood. If the projected public work will be injurious to the neighborhood through which it will pass, the fact that it is hanging like the sword of Damocles over the heads of the land owners in the vicinity cannot but fail to have a depressing effect upon values, and on the other hand, if it is expected that the improvement will be of such a character as to benefit the surrounding land, values usually rise in anticipation of the construction of the improvement."

It may be that under some circumstances evidence of a probable change in zoning may be admitted where such change is unrelated to the acquisition of the

subject property. However, where the change in zoning results from the taking of the subject property, as is the case here, it is not admissible under the authority we have previously cited herein.

Finally, defendants claim that the trial court committed error in failing to award them interest from the date of taking possession by plaintiff.

It is well established in Colorado that in the absence of a contract or statute so providing, no interest is allowable on an unliquidated claim for damages. *Union Co.,* supra. At the time of this acquisition there was no provision in the statutes for interest. Defendants' claim for compensation has at all times until judgment been an unliquidated demand. It was said in *Union Co.,* supra, at page 125:

"When the parties were unable to agree, and when the scheme provided for arbitration failed to effect its purpose, the courts were open to either party for a determination of the controversy. Neither with good grace may blame the other for the years of delay."

In conclusion it may be stated that previous methods of determining value have apparently created confusion in the minds of many people. The legislature has enacted a bill which should settle most of the questions. However, we feel that there never has been any question, under existing interpretations, of the proper measure of value in determining fair compensation to property owners on condemnation.

The judgment is affirmed.

Mr. Justice Day and Mr. Justice McWilliams concur.