543 P.2d 103 (1975)
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF WELD, State of Colorado, and the State Department of Highways, Division of Highways, State of Colorado, Petitioners-Appellees and Cross-Appellants,
v.
HIGHLAND MOBILE HOME PARK, INC., a Colorado Corporation, et al., Respondents-Appellants and Cross-Appellees.
No. 74-406.
Colorado Court of Appeals, Div. II.
September 16, 1975.
Rehearing Denied October 23, 1975.
Certiorari Denied December 15, 1975.
*105 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Richard W. Phillips, Special Asst. Atty. Gen., and Acting Chief Highway Counsel, Denver, John P. Holloway, Boulder, for petitioners-appellees and cross-appellants.
Robert C. Burroughs, Ault, for respondent-appellant Highland Mobile Home Park, Inc.
Hill & Hill, Alden T. Hill, Fort Collins, for respondent-appellant Wood and Deffke, Inc.
Not Selected for Official Publication.
SMITH, Judge.
This is an appeal by property owners from a rule and order entered in a highway condemnation action initiated on July 21, 1970, by the Board of County Commissioners of Weld County and the State Department of Highways. The eminent domain proceeding was brought to acquire a portion of respondents' land in connection with an improvement of United States Highway 85 between Greeley and Cheyenne, Wyoming. We affirm.
The property which is the subject of this suit was part of a 160-acre farm adjacent to the town of Pierce. It was planted in sugar beets and was owned by Woods & Deffke, Inc., a Colorado corporation. On April 13, 1970, after completion of corridor and design hearings, the right-of-way was marked across the property by flagged sticks. On May 14, 1970, the Highway Department's appraiser, together with Mr. Woods of Woods & Deffke, inspected that part of the property, equalling approximately 9.2 acres, that would become a part of the highway.
On that same day, a purchase agreement was executed between Woods & Deffke and Highland Mobile Home Park, Inc., for the sale of approximately 63 acres of the farm, including that portion adjacent to the town of Pierce over which the proposed right-of-way was located. Mr. Woods informed the highway appraiser of this agreement at the time of their meeting to inspect the property.
On June 1, 1970, the appraiser for the Highway Department valued the 9.2 acres to be taken at $4,600. On the basis of this appraisal the Highway Department, on June 24, 1970, made an offer of $4,650 for that property. This offer, with minor changes, was repeated on July 7, 1970. On July 16, 1970, the property owners submitted a counter-proposal of $27,561 to the Highway Department.
On July 10, 1970, Highland petitioned the town of Pierce for annexation of the property it had purchased. On July 21, 1970, the Board of County Commissioners and the Highway Department filed a petition for condemnation of the property and sought immediate possession; the hearing for possession was set for August 17, 1970. On August 3, 1970, the town of Pierce annexed the property and issued to Highland a permit authorizing the construction of a mobile home park. The property owners responded to the petition on August 11, 1970, by filing a motion to dismiss the hearing for immediate possession and the petition for condemnation alleging, as grounds therefor, lack of prior negotiations between the condemnor and parties interested in the property. See § 38-1-102(1), C.R.S.1973. On August 31, the trial court granted possession of the property to the Highway Department, upon condition that it deposit $18,000 with the court. See § 38-1-105(6), C.R.S.1973. Respondents subsequently withdrew $13,500 pursuant to this statute.
A commission was duly appointed to determine compensation and the Highway Department tendered its instructions relating to the duties of the commission essentially in the form of Colorado Jury Instructions 26:1. These instructions were refused in favor of those submitted by the landowners. The Highway Department subsequently made a formal objection on the record. After the commissioners were instructed, as required by § 38-1-105(1), C.R.S.1973, the hearings on compensation began.
*106 After several delays the hearing was concluded in November, 1972. The commission returned its certificate of ascertainment and assessment determining that the property owners were entitled to the sum of $8,500 as just compensation for the "taking" of their property. A rule and order was entered by the court upon the basis of the certificate and a motion for a new trial was ultimately denied.
The property owners raise several issues on appeal: (1) Whether the negotiations in this case prior to the filing of the petition in condemnation were sufficient to satisfy the requirements of § 38-1-102(1), C.R.S.1973; (2) whether certain testimony relating to enhancement of the value of the condemned property was improperly admitted by the commission, and, if so, whether the error was cured by an instruction to disregard any claim of or reference to enhancement; (3) whether certain testimony offered by the Highway Department was improper under prior orders of the court, as contrary to an instruction given by the court to the commission, and as contrary to a stipulation between the parties; and, (4) whether valuation testimony offered by the property owners was properly excluded by the commission.

Negotiation
The property owners first assert that good-faith negotiations did not precede the filing of the petition in condemnation. That assertion is predicated primarily on the fact that in September 1970, the appraiser for the Highway Department increased his opinion of the value of the condemned property from $4,600 to $7,350, to reflect the sale of the property, annexation by the town of Pierce, and issuance of the mobile home park permit. The property owners contend that, because the Highway Department's original appraisal did not take these matters into account, and because no subsequent offer was made on the basis of the revised appraisal, goodfaith negotiations had not taken place prior to the initiation of condemnation proceedings as required by § 38-1-102(1), C.R.S.1973. We disagree.
The eminent domain statutes require that the condemning authority undertake to negotiate a purchase from the owners of the property at issue as a condition precedent to condemnation. Section 38-1-102(1), C.R.S.1973. Old Timers Baseball Ass'n v. Housing Authority, 122 Colo. 597, 224 P.2d 219; Mulford v. Farmers' Reservoir & Irrigation Co., 62 Colo. 167, 161 P. 301. The burden of proof on the condemning authority is only to establish that a good-faith attempt was made to agree upon the compensation. See Stalford v. Board of County Commissioners, 128 Colo. 441, 263 P.2d 436.
In the present case, it is undisputed that the property owners received two offers from the Highway Department for the purchase of the property prior to the date on which the condemnation petition was filed. The parties also agree that the counter-offer by the property owners was far in excess of any appraisals made by the Highway Department at any time. At the time of the initial appraisal and the Highway Department's offer, the purchase agreement relied upon by the defendants was considered by the Highway Department's appraiser as not materially affecting the value of the property. It was considered in the same light by one of the property owner's own valuation experts in his testimony before the commission. Furthermore, at that time the annexation of the area and issuance of the mobile home park permit had not yet occurred. These did not become fact until after the filing of the petition for condemnation. In such circumstances the Highway Department is not required to dismiss its petition and to renew negotiations as appellants appear to suggest. The fact of negotiation, as a condition precedent to condemnation, was determined by the trial court, in limine, and its finding was supported by competent evidence. Hence, it will not be disturbed on review. Carpenter v. Francis, 136 Colo. 494, 319 P.2d 497.

*107 Enhancement

The property owners next challenge the admission of certain testimony relative to enhancement of the value of the condemned property. It is well settled in Colorado that "[a] landowner is not entitled to recover an increase or enhancement in value of his land caused by the proposed improvement for which his land is being taken." Board of County Commissioners v. Vail Associates, Ltd., 171 Colo. 381, 468 P.2d 842; Williams v. Denver, 147 Colo. 195, 363 P.2d 171. Thus, the Highway Department was clearly entitled to probe the circumstances of the transaction detailed above to determine whether enhancement had, in fact, occurred.
However, the Highway Department failed to adduce any specific evidence of enhancement and elected to abandon the issue. Therefore, the parties agreed to an instruction which specifically advised the commission that no competent evidence of enhancement had been submitted by the Highway Department and which directed that the commissioners were to disregard any claim or reference to enhancement in their consideration of the value of the condemned property. It is presumed that the finder of fact followed the instructions given it by the court. King v. Rea, 13 Colo. 69, 21 P. 1084. In light of this presumption, we cannot conclude that the commission considered the element of enhancement in the absence of specific evidence to that effect.

Valuation Testimony
Next, the property owners object to the valuation testimony offered at the commission hearing by the Highway Department. That objection is based upon the theory that certain evidence was precluded by virtue of a statement made by the trial court during the hearing for immediate possession to the effect that the property being condemned should be considered as having been devoted to trailer-park use. The essence of this remark was incorporated into the instructions submitted by the property owners, accepted by the trial court, and given to the commission prior to its hearing. A dispute about the meaning of the instruction arose during the course of the hearings before the commission. Counsel were unable to obtain a clarification of the instruction from the court and thereupon stipulated that the condemned property could be, but was not at present, being used for trailer court purposes. The commission was advised of the stipulation.
A hearing for immediate possession is an in limine proceeding in which immediate possession of the property, if need be shown, may be granted to the condemning authority provided that adequate security is deposited for the benefit of the property owners. Section 38-1-105(6), C.R.S.1973. "[I]t is the duty of a court, or judge, when temporary possession is sought, to determine as near as may be from competent evidence the compensation to which the landowner will probably be entitled when the amount is determined by a board of commissioners or a jury which must ultimately make the ascertainment." Swift v. Smith, 119 Colo. 126, 201 P.2d 609.
It is apparent that a later hearing to determine compensation is contemplated by the statute. Thus, an immediate possession hearing may be analogized to a hearing for a preliminary injunction. See C.R.C.P. 65. In such a proceeding a court may not issue any orders that will deprive a party of its day in court. Graham v. Hoyl, 157 Colo. 338, 402 P.2d 604. In the instant case, therefore, it would have been error for the trial court to make any preliminary findings, such as what was the "highest and best use" of the property, which would prevent the board of commissioners from making its own determination of each of the factors which would affect the proper compensation to be awarded to the property owners. See § 38-1-105(2), C.R.S.1973. Such a finding is, and was, proper only in helping the trial court arrive at a conclusion as to the amount of the immediate possession deposit.
*108 The prejudicial effect of the initial instruction was, however, substantially eliminated by two events. As was noted above, the commission proceeded on the basis of a stipulation of the parties that fairly stated the facts of the case. The power of the parties to bind a trier of fact by a stipulation is clear. United States v. Rodriguez, 241 F.2d 463 (7th Cir.); see Colorado Jury Instructions 3:7. In addition, the instruction given to the commission by the trial court on this issue at the conclusion of the testimony was a proper statement of the applicable law.
We conclude from our examination of the record that the testimony given by the appraiser for the Highway Department was within the bounds of the stipulation. Any discrepancies which appear in his testimony were matters affecting his credibility which were to be resolved by the finder of fact. Briano v. Rubio, 141 Colo. 264, 347 P.2d 497; Book v. Paddock, 129 Colo. 84, 267 P.2d 247.

Exclusion of Evidence
The fourth basis for appeal raised by the property owners is that certain valuation testimony by an appraiser for the owners was improperly excluded by the commission. The excluded testimony consisted of the prices paid on the sale of individual lots within the town of Pierce. The commission only excluded this testimony pending full arguments on the issue. Respondents never sought such a determination, nor did they seek to re-introduce the evidence; however, the appraiser was allowed to testify to his opinion of the value of the property taken even though his calculations were based upon the excluded evidence. Under these circumstances, there was no prejudicial error.

Cross-Appeal
Counsel for the Highway Department raise an issue on cross-appeal concerning withdrawal by the property owners of funds deposited with the court and their subsequent refusal to return, pending appeal, the amount of the funds withdrawn that were in excess of the condemnation award. Since we assume that the property owners will comply with the terms of the withdrawal agreement and the order of the court requiring that the funds be refunded, we have no occasion to decide this issue at this time.
Judgment affirmed.
ENOCH and KELLY, JJ., concur.