The **FOWLER IRREVOCABLE TRUST 1992–1, Plaintiff–Appellee and Cross–Appellant,**

v.

**CITY OF BOULDER, a Colorado municipal corporation, Defendant–Appellant and Cross–Appellee.**

Nos. 97CA1005, 97CA1810.

Colorado Court of Appeals, Div. II.

March 4, 1999.

Certiorari Granted Feb. 14, 2000.

Caplan and Earnest, LLC, Alexander Halpern, J. Marcus Painter, Colleen A. O'Laughlin, Boulder, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Joseph N. deRaismes, III, City Attorney, Jerry P. Gordon, Assistant City Attorney, Boulder, Colorado; Opperman & Associates, P.C., Marlin D. Opperman, William M. Schell, Douglas S. Widlund, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge CRISWELL.

In this inverse condemnation action, defendant, the City of Boulder (Boulder), appeals the judgment entered in favor of plaintiff, The Fowler Irrevocable Trust 1992–1 (Fowler). Fowler also appeals, complaining of the trial court's refusal to award it additional attorney fees and pre-judgment interest. We affirm in part and reverse in part.

This action arose sometime after Boulder began construction of Phase II of a multiphased project known as the Goose Creek Channel Improvement Project (Project). The purpose of the Project was to create a channel capable of carrying a 100–year flood in the Goose Creek drainage. The parties agree that the Project benefits the public's health, safety, and welfare.

During its construction of Phase II, Boulder employed at least three different contractors, with each of whom it entered into a written agreement to perform work on the Project. Each of these agreements specified, among other things, that the contractor was to obtain permission from the owner before entering upon or using any private property.

Fowler owns two parcels of realty abutting Goose Creek, portions of which it claims were taken by Boulder. Parcel 1 is a 347–square–foot parcel upon which a sewer line was installed by Boulder's contractors. Parcel 2 is a 3.09–acre parcel that was used by several contractors who performed work on the Project. The evidence at trial established that, during the 26–month period from June 1993 to September 1995, the contractors used Parcel 2 for a staging, storage, and construction area for the Project.

Pursuant to § 38–1–101, et seq., C.R.S. 1998, the trial of this action was divided into two phases. The issues whether there was a permanent and/or a temporary taking of the parcels, how much property was taken, and the length of any temporary taking were first determined in a bench trial. The court found that Boulder had permanently taken Parcel 1 for a sewer line and it had temporarily taken Parcel 2 for 26 months for use in connection with the Project.

Thereafter, a jury was impaneled to determine the just compensation owed to Fowler for both the permanent taking of Parcel 1 and the temporary taking of Parcel 2. A verdict was returned awarding compensation to Fowler of $1,200 for the permanent taking of Parcel 1 and $164,000 for the temporary taking of Parcel 2. Of the second sum, $41,000 was allocated as restoration costs required to return Parcel 2 to the condition it was in before the contractors' use of it.

In addition, the trial court awarded Fowler some $30,000 in attorneys fees, pursuant to § 13–17–102, C.R.S.1998, and approximately $18,000 in costs. It denied Fowler's motion for additional attorneys fees and pre-judgment interest.

I.

Boulder first contends that the trial court erred by determining that it was liable in inverse condemnation for the temporary taking of Parcel 2. We disagree.

Both the Fifth and Fourteenth Amendments and Colo. Const. art. II, § 15, prohibit

the taking of private property for public use without just compensation. *First English Evangelical Lutheran Church v. Los Angeles County, Cal.,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Thompson v. City & County of Denver,* 958 P.2d 525 (Colo.App. 1998).

▆ As a general rule, a taking of property occurs when the entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property. A taking can be effected by a legal interference with the physical use, possession, disposition, or enjoyment of the property, or by acts which constitute an exercise of dominion and control by a governmental entity. A taking also occurs if an owner is required to forego all economically beneficial use of his or her property. *See Thompson v. City & County of Denver, supra; Clare v. Florissant Water & Sanitation District,* 879 P.2d 471 (Colo. App.1994). *Cf. City of Northglenn v. Grynberg,* 846 P.2d 175 (Colo.1993).

▆ A taking cannot, however, result from simple negligence by a governmental entity. For governmental action to result in a taking, the taking must be a:

> reasonably foreseeable consequence of an authorized action. In other words, the government must have the intent to take the property or *to do an act which has the natural consequence of taking the property.*

*Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 921–22 (Colo. 1993) (emphasis supplied). Hence, the consequence of the action alleged to be a taking must be a "direct, natural, probable result of that action." *Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra,* 848 P.2d at 921.

▆ However, a governmental entity can be held liable for a taking even if the actual conduct complained of was performed by another person or entity. *City of Colorado Springs v. Stark,* 57 Colo. 384, 140 P. 794 (1914) (city cannot shift or evade liability for inverse condemnation by procuring or permitting another to do the work).

Both the United States Supreme Court and a division of this court have recognized that just compensation must be paid for a temporary, as well as for a permanent, taking. *First English Evangelical Lutheran Church v. Los Angeles County, Cal., supra; Williams v. City of Central,* 907 P.2d 701 (Colo.App.1995). Specifically, the Supreme Court has held that: "[T]emporary takings which ... deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *First English Evangelical Lutheran Church v. Los Angeles County, Cal., supra,* 482 U.S. at 318, 107 S.Ct. at 2388, 96 L.Ed.2d at 266.

▆ Inverse condemnation is the mirror image of eminent domain. *Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra.* To pursue an inverse condemnation claim under the Colorado Constitution, that is, to compel a public entity to provide compensation to a property owner, the property owner must establish that: (1) there has been a taking or damaging of a property interest; (2) for a public purpose; (3) without just compensation; (4) by a governmental or public entity that has the power of eminent domain, but which has refused to exercise that power. *Thompson v. City & County of Denver, supra.*

Boulder contends that it cannot be liable for any temporary taking here because Parcel 2 was not used by it, but rather by its contractors. It asserts that, because such use was not authorized, it is not liable for any alleged temporary taking by the contractors, which taking was not a direct, natural, or probable result of any of Boulder's authorized actions. Its position is based upon evidence that the contract entered into with each of its contractors required that contractor to obtain the owner's permission before using any private property and evidence that Boulder had reminded the contractors of this requirement and told them to vacate Parcel 2 if they were on it without Fowler's permission.

However, *Trinity*'s test does not require proof that Boulder specifically authorized the precise invasion complained of; rather, it

requires only that the invasion be a reasonably foreseeable consequence of its authorized action. And, we conclude that, here, there is record support for the trial court's finding that Boulder was responsible for the temporary taking of Parcel 2.

 The evidence established that Boulder initiated the Project for the benefit of the public and hired the contractors to perform the work. That evidence also established that Boulder knew of the contractors' use of Parcel 2 for more than two years, but failed to prevent that use, and it accepted the benefits of it. Indeed, there was undisputed evidence that Boulder had written notice of the contractors' unauthorized use of Parcel 2 as early as July 1, 1993, less than one month after the use commenced, but it had failed to require the contractors to leave the property. Further, at least two witnesses testified that the use of Parcel 2 in connection with the Project was, in fact, physically unavoidable, given the nature of the work required and the parcel's location. This latter evidence, if credited, would render any conflict with respect to Boulder's express or implied consent to the use substantially irrelevant.

The evidence, therefore, supports the court's determination that Boulder's actions constituted more than mere negligence and that the use of Parcel 2 was a direct, natural, and probable result of the actions that Boulder specifically authorized its contractors to take.

In a related argument, Boulder contends that it cannot be held liable for the entire period involved because, during a part of that time, one of its contractors had obtained verbal permission to use Parcel 2.

During the pertinent period, there was another party who owned an interest in Parcel 2, who was not a party to this litigation. One of Boulder's contractors testified that he obtained verbal permission from *someone* to use Parcel 2. However, this contractor testified that he did not speak with anyone with authority to allow the use of Parcel 2, and in fact, he did not even know the identity of the person from whom he allegedly obtained permission. In contrast, there was evidence that Fowler gave no permission to anyone to use Parcel 2. Given this conflicting evidence,

the record supports the trial court's finding that the use of Parcel 2 was not authorized by Fowler and that Boulder temporarily possessed Parcel 2 for a period of 26 months.

## II.

Boulder also asserts that certain valuation testimony presented by Fowler was improper and that the court should not have allowed the jury to consider that testimony. With this contention, we agree.

Both a representative of Fowler, as the owner, and an expert witness called by Fowler testified as valuation witnesses. In doing so, because it was undisputed that, upon final completion of all phases of Boulder's Goose Creek channelization program, of which Phase II was only an initial part, both Parcel 1 and Parcel 2 would no longer be in a floodplain and, therefore, no longer subject to the use restrictions presently in effect under Boulder's Floodplain Regulation, Fowler's expert assumed that neither parcel was subject to those use restrictions at the time of the takings.

Relying upon *City & County of Denver v. Smith,* 152 Colo. 227, 381 P.2d 269 (1963) and *Williams v. City & County of Denver,* 147 Colo. 195, 363 P.2d 171 (1961), Boulder asserts that consideration of any enhanced value resulting from the parcels' removal from the floodplain cannot be considered because that enhancement will result from the very project for which Fowler's property was taken. We agree that this testimony was inadmissible, but for more fundamental reasons.

## A.

In *Stark v. Poudre School District R-1,* 192 Colo. 396, 560 P.2d 77 (1977), the supreme court recognized that, if there exists a reasonable probability that land taken by a condemning authority would have been rezoned in the *future,* so that such land could later have been devoted to uses that the present zoning would not allow, such probability would likely impact upon the *present* value that a willing seller and a willing buyer would place upon that property. Hence:

The rule is clear in this jurisdiction that the probability of rezoning may be considered by the commissioners insofar as it would reasonably be reflected in *present market value*.

*Stark v. Poudre School District R–1, supra,* 192 Colo. at 398, 560 P.2d at 79 (emphasis supplied). *See also Department of Highways v. Schulhoff,* 167 Colo. 72, 76, 445 P.2d 402, 404 (1968) ("any reasonable future use ... may be considered in so far only as it may assist the jury in arriving at the present market value"); *State Department of Highways v. Ogden,* 638 P.2d 832 (Colo.App.1981). *See generally* Annotation, *Zoning as Factor in Determination of Damages in Eminent Domain,* 9 A.L.R.3d 291 (1966).

■ In applying this rule, however, it is improper to evaluate the subject property by assuming, as Fowler's expert witness did here, that that property is not *presently* subject to the pertinent use restrictions. Rather, it is only to the extent that the prospect of future additional uses for the property has an influence upon its present market value that such prospect is relevant. *See State v. Graeler,* 527 S.W.2d 421 (Mo.App.1975); *State v. Market Associates,* 134 N.J.Super. 282, 340 A.2d 663 (1975).

Here, Fowler's valuation expert specifically noted that he had been instructed to assume that the two parcels were *presently* not in a floodplain and that he had evaluated the two parcels based on this assumption. Such testimony was improper and should not have been received.

Fowler argues, however, that, because one of its representatives testified as an owner and expressed an opinion upon value that would support the jury's award, that award may be sustained based upon this testimony. We disagree.

■ It is generally true that an owner of property is competent to testify with respect to the value of that property. However, even an owner's opinion with respect to value is inadmissible if it is based upon improper considerations. *Denver Urban Renewal Authority v. Hayutin,* 40 Colo.App. 559, 583 P.2d 296 (1978); *see State Department of Highways v. Pigg,* 656 P.2d 46 (Colo.App. 1982).

Here, Fowler's representative, unlike its expert witness, did not specifically concede that his opinion was based upon the assumption that the parcels were not presently in the floodplain. At the same time, however, the alleged comparable sales upon which he relied were all of properties that were not within the floodplain. This could lead to the conclusion that this witness did, in fact, rely upon the same assumption as did the expert.

■ Moreover, even if we were to assume that the testimony of Fowler's representative was not subject to the same objection as that of its expert witness, we could not conclude that the existence of this testimony rendered the receipt of the expert's testimony harmless. Because the jurors may have relied upon the expert in returning their verdicts, receipt of that testimony constituted reversible error, and the cause must be remanded for a retrial of the question of compensation due Fowler.

## B.

■ Based upon the above conclusion, Fowler's valuation testimony should not have been received to establish the value of either parcel. However, because of the difference in the methods used in evaluating an interest temporarily taken from one that is subject to a permanent taking, we also conclude that evidence that Parcel 2 might be removed from the floodplain sometime in the future is irrelevant for *any* purpose.

■ First, we reject Boulder's argument that compensation for the temporary taking of land should be based upon the before and after value of the fee. Such valuation is totally unrelated to the right of which the owner has been deprived by a temporary taking of his or her property.

■ If a condemning authority takes a permanent estate in the property, the transaction resembles the sale of an interest in that property. And, in the transfer of a permanent interest in land, the value of the estate transferred may be influenced, in part, by the probability that the transferee will be

able to use the property in the future for purposes for which it cannot presently be used. *See Stark v. Poudre School District R–1, supra.*

 In contrast, a temporary taking of a parcel resembles the creation of a leasehold interest in the condemning authority more than it does the conveyance of a permanent estate to it. *See Yuba Natural Resources, Inc. v. United States,* 904 F.2d 1577 (Fed.Cir. 1990). Consequently, the most widely accepted standard for compensating the owner of property that has been temporarily taken is the fair rental value of the property during the time that the condemning authority possessed it. *See* 9 P. Rohan & M. Riskin, *Nichols on Eminent Domain* § 32.08[2] at 32–31 and 32–32 (1998). *See also Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949). We agree that this is the standard that should be used in determining the compensation due an owner for a temporary taking.

 However, unlike the grantee of a permanent interest in property, the temporary lessee of property is, of necessity, interested only in the use to which that property may be put during the period of his or her tenancy. Hence, the probability of a zoning change that might occur some time after the tenancy expires can have no effect upon the fair rental value of the property during that tenancy. Likewise, if, during the period of a temporary taking, there are use restrictions that apply to the property, the fair rental value must be assessed in light of those restrictions, and the fact that those restrictions may be removed sometime after the temporary taking has terminated is irrelevant.

We conclude, therefore, that evidence that the floodplain restrictions that were in effect during the time that Boulder temporarily possessed Parcel 2 might be removed sometime in the future could have no impact upon that parcel's fair rental value during the period of that possession. Evidence with respect to this subject, therefore, should not be considered for any purpose in determining the proper compensation to be paid to Fowler for the temporary taking of Parcel 2.

In contrast, evidence of a probable change in the restrictions could be considered with respect to the permanent taking of Parcel 1 in the manner that we have described, but only if any change in those restrictions would not have resulted because of the project for which that parcel was taken. *See City & County of Denver v. Smith, supra.* Because the parties disagree whether Phase II and Phase III of the overall project were both parts of the same project for this purpose, and because this question may well involve factual determinations, this issue should be passed upon, in the first instance, by the trial court.

In reaching these conclusions, we have not considered Fowler's argument that Boulder is estopped from asserting that Parcel 2's value must be determined in light of the present floodplain regulations because this issue was not raised by Fowler in the trial court. *See Mohawk Green Apartments v. Kramer,* 709 P.2d 955 (Colo.App.1985) (issues not raised in trial court will not be considered on appeal).

### C.

 Fowler asserts that, aside from the temporary taking of Parcel 2, for which it is entitled to compensation based on its rental value, it is entitled to additional compensation for the physical damage done to Parcel 2's surface. We agree that Fowler is entitled to compensation for this damage. *See United States v. General Motors Corp.,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). The question presented, however, is whether that compensation is to be determined by the difference in the market value of Parcel 2 before and after that damage was done or by the cost required to restore it to its pretaking condition.

Citing *First English Evangelical Lutheran Church v. Los Angeles County, Cal., supra; Kimball Laundry Co. v. United States, supra;* and *United States v. General Motors Corp., supra,* and without referring to Colorado law, Fowler argues that the federal constitution requires an award based upon restoration costs.

In contrast, relying upon *Mustang Reservoir, Canal & Land Co. v. Hissman*, 49 Colo. 308, 112 P. 800 (1911), Boulder argues that, under the law of eminent domain, only the difference between pre- and post-damage values of Parcel 2 may be used as the basis for compensation.

▆ We find neither argument totally persuasive. Nevertheless, we agree with Boulder that, absent special circumstances, it is the difference in market value and not the cost of restoration that is the proper measure for compensation. Moreover, the trial court's adoption of the latter standard here was not accompanied by a sufficient explanation for that adoption to allow us to review its propriety.

First, we reject any suggestion that the Fifth or Fourteenth Amendment requires a landowner to be paid restoration costs, as distinguished from an award based on a diminution in market value, when property is damaged during a temporary taking. Clearly, if property is damaged during such a taking, compensation in some form is required, *United States v. General Motors, Corp., supra*, but such compensation may be limited.

▆ · Only that damage that has an adverse effect upon the property's "transferable," or market, value is compensable. To the extent that such damage represents only a personal loss to the owner and has no effect upon the property's market value, the damage suffered by the owner need not be compensated; such a taking is similar to a taking under the police power in which the loss of property is a burden of common citizenship. *See Kimball Laundry Co. v. United States, supra.*

At the same time, however, the rule advocated by Boulder and adopted in *Mustang Reservoir Canal & Land Co. v. Hissman, supra*, that the only appropriate measure of compensation for injury to real property is diminution of market value, "[is] no longer sound and [has] not been for some time." *Board of County Commissioners v. Slovek*, 723 P.2d 1309, 1315 (Colo.1986).

Both *Mustang Reservoir* and *Slovek* were actions against a public entity for damages caused by water trespassing upon private property and causing damage as a result. While Boulder refers to *Mustang Reservoir* as a "temporary taking" case, it would appear that neither of these cases was tried as an inverse condemnation action; they were both tort actions. Nevertheless, we reject Boulder's attempt to distinguish between an award in tort for physical damage to property and compensation awardable in a condemnation action for physical damage done to property.

If, as here, the landowner is entitled to compensation for physical damage sustained by his property during a temporary taking, no good reason has been suggested why the compensation due to the landowner for that physical damage (as distinguished from compensation for other items of damage, such as personal injury damages) should differ from that recoverable in tort. We conclude, rather, that the standard or measure for determining the amount of compensation for such damage should be the same, irrespective of the form of the action.

▆ In general, the compensation due to a landowner for damage to real property is the difference in that property's value before and after the damage occurs. *Board of County Commissioners v. Slovek, supra; Federal Insurance Co. v. Ferrellgas, Inc.*, 961 P.2d 511 (Colo.App.1997). However, a court may deviate from this standard if conditions exist that would render the award of compensation under this standard unfair or inappropriate. *Board of County Commissioners v. Slovek, supra; see also Game & Fish Commission v. Farmers Irrigation Co.*, 162 Colo. 301, 426 P.2d 562 (1967).

Restatement (Second) of Torts § 929 comment b (1979) describes some factors that a court should consider in deciding when the general rule should not be applied, and there may be other factors warranting a deviation, as well. However, any court authorizing such a deviation must be careful to assure that the damages awarded are not a windfall to the landowner, and in any case, it "must articulate the reasons for its decision so as to facilitate effective appellate review." *Board*

*of County Commissioners v. Slovek, supra,* 723 P.2d at 1316.

Here, the trial court concluded that the amount of compensation to be awarded Fowler for the damage suffered by Parcel 2 during its use by Boulder must be based upon the cost required to restore that parcel to its pretaking condition, and it so instructed the jury. Likewise, it refused to allow Boulder to present any evidence respecting the effect of such damage upon Parcel 2's market value.

However, there is no evidence that any of the factors enumerated in the Restatement to justify abandoning the general rule exist here. And, while other factors present might justify the trial court's actions, it did not sufficiently articulate its reasons for adopting another standard. Hence, we cannot appropriately determine whether the application of that standard here was proper or improper.

We shall, therefore, remand the cause to the trial court for its reconsideration of this issue in accordance with *Board of County Commissioners v. Slovek, supra,* and for the adoption of findings with respect to that issue. If it concludes, after such reconsideration, that it erroneously adopted an improper measure of compensation, it shall order a new trial on this issue, as well. Otherwise, the judgment for restoration costs shall stand affirmed, subject to either party's right to appeal from the court's order on remand.

### III.

#### A.

Boulder next contends that the trial court erred in awarding attorneys fees to Fowler pursuant to § 13–17–102, C.R.S.1998. We agree.

To prevail on its claim for attorney fees, Fowler must prove by a preponderance of evidence that Boulder's defense lacked "substantial justification." Section 13–17–102(2), C.R.S.1998; *Board of County Commissioners v. Auslaender,* 745 P.2d 999 (Colo.1987). A claim or defense lacks "substantial justification" if it is one that is "substantially frivolous, substantially groundless, or substantial-

ly vexatious." Section 13–17–102(4), C.R.S. 1998.

The award of attorney fees on the basis that a claim lacks substantial justification is committed to the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *Engel v. Engel,* 902 P.2d 442 (Colo.App.1995). However, an attorney fee award will be set aside if the record does not support a determination that the claim or defense lacked substantial justification. *See M Life Insurance Co. v. Sapers & Wallack Insurance Agency, Inc.,* 962 P.2d 335 (Colo.App.1998); *SaBell's Inc. v. City of Golden,* 832 P.2d 974 (Colo.App.1991) (trial court erred in awarding fees where record did not support conclusion that claim was either frivolous or groundless); *Cassidy v. Smith,* 817 P.2d 555 (Colo.App.1991) (rejecting trial court's finding that action was frivolous; substantial legal arguments supported plaintiffs' position); *William H. White Co. v. B & A Manufacturing Co.,* 794 P.2d 1099 (Colo.App.1990) (claim not frivolous where plaintiff asserted a rational argument in support of its contention).

A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of the claim. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

A claim or defense is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence. *See Western United Realty, Inc. v. Isaacs, supra.*

A vexatious claim or defense is one brought or maintained in bad faith. *Bockar v. Patterson,* 899 P.2d 233 (Colo.App.1994). Bad faith may include conduct which is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy. *Western United Realty, Inc. v. Isaacs, supra.*

Claims that present novel questions of law, for which no determinative authority exists, are not frivolous, groundless, or vexatious. *Board of County Commissioners v.*

*Colorado Counties Casualty & Property Pool,* 888 P.2d 352 (Colo.App.1994); *see also Nienke v. Naiman Group, Ltd.,* 857 P.2d 446 (Colo.App.1992) (lawyer is subject to sanctions for advancing a frivolous claim only if lawyer failed to present any rational argument to support client's position).

■■■ The trial court found that Boulder's defense—that it was not liable for the actions of its contractors in occupying and using plaintiff's property—lacked substantial justification. We conclude, however, that that defense was neither frivolous, insubstantial, nor vexatious.

Boulder, relying upon *Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra,* defended against Fowler's claim on the basis that, because it had not authorized the contractors' use of Parcel 2, such use was not a direct, natural, or probable result of any authorized action. No previous appellate opinion has applied the *Trinity* principles to any factual scenario similar to that presented here. And, the relevant contract documents seemingly prohibited the contractors' conduct upon which Fowler's claim was based.

In addition, Boulder presented case law from other jurisdictions holding that the unauthorized actions of independent contractors cannot result in a taking by the contracting governmental agency.

The fact that Boulder did not prevail in these assertions does not make them frivolous. *See M Life Insurance Co. v. Sapers & Wallack Insurance Agency, Inc., supra.* Indeed, whether Boulder's actions here amounted to a ratification of its contractors' unauthorized actions or whether the Project itself necessarily required the temporary use of Parcel 2 presented factual issues upon which reasonable triers of fact might well have drawn differing inferences.

We conclude, therefore, that, because Boulder's defense involved a novel question of law and was supported both by some credible evidence and by rational argument, the record cannot support the trial court's finding that its defense was "frivolous and without merit." The award of attorney fees must, accordingly, be reversed.

**B.**

■■■ In contrast, as a part of its appeal, Fowler argues that the trial court erred by refusing to award it attorneys fees pursuant to § 38–1–122, C.R.S.1998. We disagree with this assertion.

Section 38–1–122 directs the trial court to award attorneys fees to a property owner "if the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding."

■■■ The purpose of § 38–1–122 is to compensate a property owner who is required to incur costs when the condemning authority does not proceed properly. *Platte River Power Authority v. Nelson,* 775 P.2d 82 (Colo.App.1989).

Fowler argues that an award of attorney fees is required here because Boulder took the property without initiating an eminent domain proceeding, *i.e.,* it took physical possession of the property without proper "authority" to do so. Accepting Fowler's argument would, in essence, require an award of attorney fees in *all* successful inverse condemnation actions.

While it could reasonably be argued that a landowner who is required to bring an action in inverse condemnation against a condemning authority that has taken property without resorting to proper legal procedures should be recompensed for the fees expended in so doing, we do not interpret § 38–1–122 as providing such a remedy.

The statute is part of an article addressing rights and remedies in condemnation proceedings and, indeed, specifically refers to a "condemnation proceeding." By its location in the statutory scheme and its plain language, the statute indicates that it is addressing fees incurred in defending against unauthorized condemnation proceedings. The few cases construing the section have applied it in such circumstances. *See Platte River Power Authority v. Nelson, supra* (attorney fee award upheld for a condemnation action dismissed because of governmental entity's failure adequately to describe requested easement); *West v. Hinksmon,* 857 P.2d

483 (Colo.App.1992) (in private condemnation action, attorney fees allowed where condemnee proved that acceptable alternate route was available to condemnor at the time action as commenced).

 Absent evidence of a contrary legislative intent, we conclude that § 38–1–22 does not authorize fee awards in situations other than successful defenses in condemnation proceedings. Hence, an award of fees here would be improper. *See Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990) (fees may be awarded only if statute or contract authorizes award).

### IV.

 Boulder finally contends that the trial court erred in awarding Fowler some $2,300 in costs attributable to expert witness fees for witnesses who did not testify at trial. Specifically, it argues that, because these witnesses did not testify at trial, their expenses were not reimbursable under § 13–16–122, C.R.S.1998, and their award was, therefore, improper. Because a similar issue may be presented after the remand proceedings, we elect to address the issue.

 As the prevailing party, Fowler is entitled to its costs pursuant to C.R.C.P. 54(d) and § 13–16–122. Expenses incurred for the purpose of valuing the property taken in a condemnation proceeding are viewed as expenses necessarily incurred by reason of the litigation. *See City of Colorado Springs v. Berl,* 658 P.2d 280 (Colo.App.1982).

Boulder does not contend that the contested expenses were not reasonably incurred for the purpose of valuing the property taken. Rather, it questions only the propriety of such costs as expert witness fees pursuant to §§ 13–16–122 and 13–33–102(4), C.R.S.1998.

Because we conclude that because the costs awarded were valuation expenses necessarily incurred by reason of the litigation and were necessary for the proper preparation for trial, we find no error in the trial court's decision to award these costs to plaintiff under C.R.C.P. 54(d) and § 13–16–122. *See Cherry Creek School District No. 5 v. Voelker,* 859 P.2d 805 (Colo.1993) (the list of expenses that may be awarded as costs un-

der § 13–16–122 is illustrative rather than exclusive).

### V.

 Another issue that may arise on remand is presented by Fowler's assertion that the trial court erred in refusing to award it pre-judgment interest pursuant to § 38–1–116, C.R.S.1998. We perceive no error.

 The statutes establishing the general procedure for the exercise of the power of eminent domain, §§ 38–1–101 through 38–1–122, C.R.S.1998, make clear that an award of pre-judgment interest to a landowner is designed only to compensate that owner for any possible difference between the value of the property as of the date that the condemning authority takes possession of the property and any payment made to the owner at that time. Hence, § 38–1–116, C.R.S. 1998, directs a court to award pre-judgment interest only if possession of the property has been previously taken by a condemning authority pursuant to § 38–1–105(6), C.R.S. 1998.

If the property is sought to be condemned under this procedure and if the court authorizes the condemning authority to take possession of the property prior to the valuation hearing, the ultimate award of compensation, based on the value of the property, shall, in that case, be determined "as of the date the petitioner is authorized by … court order to take *possession*...." If, however, the condemning authority has not taken possession of the property prior to the valuation hearing, then, the valuation date is to be *"the date of trial* or hearing to assess compensation...." Section 38–1–114, C.R.S.1998 (emphasis supplied).

The date the condemning authority is granted the right to possession of the property is, therefore, important for two reasons. First, it establishes the valuation date of the property for compensation purposes. Second, it establishes the date from which the owner may be entitled to receive pre-judgment interest, if the later award exceeds the amount the landowner has previously received. *See The Mill v. State,* 868 P.2d 1099

(Colo.App.1993), *rev'd on other grounds,* 887 P.2d 993 (Colo.1994).

Here, no order authorizing Boulder to take possession of the property was entered prior to trial. Moreover, the evaluation date used by each of the parties here, without objection from either, was the date of the hearing, and the jury was specifically instructed to determine the value of the property taken as of that date. Accordingly, because the property was valued as of the date of the trial and not as of some earlier date, no award of prejudgment interest was authorized.

To the extent that the judgment declared that Boulder permanently took Parcel 1 and that it temporarily took Parcel 2, it is affirmed. The judgment awarding compensation to Fowler for those takings, however, is reversed, and the cause is remanded to the trial court for further hearing and consideration in accordance with the views expressed in this opinion.

Judge CASEBOLT and Judge VOGT concur.