**CITY OF BOULDER, a municipal corporation of the State of Colorado, Petitioner–Appellant,**

v.

**FOWLER IRREVOCABLE TRUST 1992–1, Respondent–Appellee.**

**No. 01CA0224.**

Colorado Court of Appeals, Div. V.

Jan. 3, 2002.

Certiorari Denied Aug. 26, 2002.

Opperman & Associates, P.C., Marlin D. Opperman, William M. Schell, Denver, CO; Joseph N. deRaismes, III, City Attorney, Jerry P. Gordon, Assistant City Attorney, Boulder, CO, for Petitioner–Appellant.

Weiner, Schiller and May, P.C., Mark E. May, Englewood, CO, for Respondent–Appellee.

Opinion by Judge VOGT.

The City of Boulder appeals from a judgment entered in condemnation proceedings brought by it to acquire property owned by the Fowler Irrevocable Trust 1992–1 (the Trust). Boulder challenges the trial court's rulings on the parties' pretrial motions in limine and on Boulder's request at trial to present testimony of a surrebuttal witness. We affirm.

Boulder filed a petition in condemnation to acquire a 3.01 acre parcel of undeveloped land owned by the Trust and needed for a project to construct flood control and drainage facilities along Goose Creek.

At the time the petition was filed, most of the parcel was designated on the flood insurance rate map of the Federal Emergency Management Agency (FEMA) as being in

Zone A, the floodway of Goose Creek, an area of high flood hazard. The property was also identified in Boulder's floodplain ordinances as being predominantly in a high flood hazard zone. Development of the property was essentially prohibited because of these designations.

Before the valuation trial, both parties filed motions to have the trial court determine whether the limitation on development of the property arising out of these designations could be considered in valuing the property. The Trust argued that the high hazard and floodway designations were the result of the project for which the property was being taken and thus, under the project influence rule, could not be considered in determining the property's value. Boulder argued that the designations did not arise from the Goose Creek channelization project for which the property was being acquired and that their effect on the property's value could therefore be taken into account.

In a bench ruling following a two-day evidentiary hearing, the trial court stated at the outset that resolution of the issue required it to define the project and its scope and to determine the relationship of the floodway and high hazard designations to the project. Based on the evidence, the court defined the project as a two-track flood control effort, begun in the 1970s, that involved both (1) effectuating physical changes on the land such as channelization to mitigate flood damage, and (2) conforming Boulder's floodplain regulations to federal standards so that city residents could take advantage of federal insurance programs. The two tracks were characterized by the court as "inextricably intertwined and intersecting," with Track 1 physical changes affecting FEMA designations and Track 2 efforts to meet FEMA requirements affecting Track 1 decisions.

The court found that, before the 1980s, the Trust's property was designated by Boulder as being in a floodplain and by FEMA as being in Zone B, which meant that it was subject to some flooding but that the owner was free to develop and build on the property without significant limitation. The court further found that, as a direct result of Boulder's flood control project, the property had been reclassified by FEMA as being in the Goose Creek floodway (Zone A) and by Boulder as being in a high hazard area. The parties had stipulated that these designations "essentially prohibited" development.

The trial court concluded that, because the designations reducing the value of the property resulted from the project for which the property was being taken, they could not be considered in valuing the property.

Consistent with the trial court's ruling, the parties' evidence of value at the valuation trial did not take into account the effect of the floodway and high hazard designations. The commissioners were instructed that they could consider "the existence of flooding and drainage which may occur on the property," but could not consider any regulatory limitations on development of the property arising out of its classification as a floodplain, floodway, or high hazard area. The commission awarded the Trust $2,092,351 as compensation for the taking of its property, and the court entered judgment in that amount.

### I.

Boulder contends that the trial court erred in ruling that the designations limiting development of the property were part of the same channelization project for which the property was being acquired and, accordingly, precluding consideration of those limitations in valuing the property. We disagree.

Where, as here, a trial court's ruling in a condemnation case presents a mixed question of law and fact, we review its evidentiary findings of fact under a clear error standard and review its conclusions of law de novo. *See E–470 Public Highway Authority v. 455 Co.,* 3 P.3d 18 (Colo.2000).

### A.

Article II, section 15, of the Colorado Constitution provides, in relevant part, that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation."

Under the principle referred to by the parties and the trial court in this case as the "project influence rule," just compensa-

tion cannot include any enhancement or reduction in value that arises from the very project for which the property is being acquired. *See Williams v. City & County of Denver,* 147 Colo. 195, 363 P.2d 171 (1961); *see also Department of Health v. Hecla Mining Co.,* 781 P.2d 122 (Colo.App.1989)(enhancement in value attributable to decontamination project for which property was being acquired could not be considered in determining property's value); *E–470 Public Highway Authority v. 455 Co.,* 983 P.2d 149 (Colo.App.1999)(reservation of highway right-of-way that diminished property's value could not be used to reduce compensation due landowner whose property was being taken for same highway project), *rev'd on other grounds,* 3 P.3d 18 (Colo. 2000); *see generally* 4 Julius L. Sackman, *Nichols on Eminent Domain* § 12B.17[1] (rev. 3d ed. 1999).

This principle promotes fairness in valuing property by preventing a windfall to the property owner based on speculative potential enhancements in value while, at the same time, protecting the property owner from the injustice of assessing against it a diminution in the property's value caused by the same project for which it is being taken. *See Williams v. City & County of Denver, supra.*

Application of the project influence rule often requires determining the scope of the project for which the property is being taken. The court must determine whether the property was probably within the scope of the project from the time the government was committed to the project. If it was, the property owner is not entitled to any increase in value, and is not charged with any decrease in value, occasioned by the government's undertaking the project. *See, e.g., United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970); *United States v. Land,* 213 F.3d 830 (5th Cir.2000).

■ "Project scope" is not to be narrowly interpreted. *United States v. 62.17 Acres of Land,* 538 F.2d 670, 678 (5th Cir.1976). Further, if the property was within the scope of the project from the outset, the fact that it was acquired only in a later phase of the project does not preclude application of the project influence rule. *See Board of County*

*Commissioners v. Ferrebee,* 844 P.2d 308 (Utah 1992).

■ Like other circumstances affecting a property's value, enhancements or reductions in value based on regulatory actions, such as rezoning or the imposition of use limitations, are excluded from consideration under the project influence rule if they result from the project. *See Williams v. City & County of Denver, supra,* 147 Colo. at 201, 363 P.2d at 174 (approving trial court ruling precluding evidence of probable zoning change if "such probability of change in zoning arose subsequent to the filing of this action as a result of the proposed construction or actual construction of the public work"); *see also People ex rel. Department of Public Works v. Arthofer,* 245 Cal.App.2d 454, 54 Cal.Rptr. 878, 885 (1966)(where subject property had been within scope of proposed freeway from the outset, "changes in land use, to the extent that they were influenced by the proposed improvement, were properly excluded from consideration in evaluating the property taken"); *Masheter v. Kebe,* 34 Ohio App.2d 32, 295 N.E.2d 429 (1973)(where interchange zoning was adopted as direct result of interstate highway improvement, parcel taken for construction of improvement had to be valued without consideration of the zoning change), *aff'd,* 49 Ohio St.2d 148, 359 N.E.2d 74 (1976); *State v. Templeman,* 39 Wash.App. 218, 693 P.2d 125 (1984)(rezoning and extension of utilities to property that were a direct result of proposed highway project for which property was taken were to be disregarded in determining compensation for property).

Conversely, the effect on value of such regulatory actions is not excluded from consideration under the project influence rule if the actions predated or were unrelated to the project. *See Williams v. City & County of Denver, supra,* 147 Colo. at 201–02, 363 P.2d at 175 (noting that evidence of probable zoning change could be admitted where such change was "unrelated to the acquisition of the subject property"); *Maricopa County v. Barkley,* 168 Ariz. 234, 812 P.2d 1052 (Ct.App.1990)(error to instruct jury that it could ignore diminution in property value caused by floodplain regulations where evidence did not support claim that regulations

were preliminary steps to the taking of the property); *Kansas City Power & Light Co. v. Jenkins,* 648 S.W.2d 555 (Mo.Ct.App.1983)(rezoning that occurred prior to taking was done to permit an unrelated industry to relocate and was not result of project for which property was taken; therefore, evidence of rezoning was properly admitted).

### B.

The trial court applied these legal principles here, recognizing that "[i]f the high hazard and floodway designations ... result from the project, [the Trust] must prevail, and if they do not, [Boulder] must prevail."

Boulder argues that the trial court's application of the project influence rule was legally erroneous because a "project" must be limited to construction or acquisition of property and cannot include regulatory actions taken by a public entity, even if such actions address the same public need. We disagree.

█ We are aware of no authority supporting the proposition that, as a matter of law, a "project" cannot be comprised of both physical activities on the land and related regulatory efforts to address the same problem. The trial court's determination that the project at issue here encompassed both kinds of efforts is, as the court observed, consistent with the principle that just compensation is essentially a matter of fairness, *see Platte River Power Authority v. Nelson,* 775 P.2d 82 (Colo.App.1989), and fairness is not served by a narrow interpretation of project. *See United States v. 62.17 Acres of Land, supra.*

Further, even if "project" were to be narrowly interpreted as Boulder proposes, the evidence discussed below could support a finding that the designations limiting development resulted from Boulder's physical activities on the land, not simply from its regulatory actions.

### C.

The trial court's finding that the designations reducing value were "a direct result of [Boulder's] activities" is supported by evidence in the record.

Boulder's floodplain and wetland coordinator testified that the property was designated as a floodplain, and as being in FEMA's Zone B, in the 1970s and early 1980s, and that "you could build" on it under those designations.

In 1986, after Boulder completed a portion of the first phase of the channel improvements to Goose Creek, it submitted a Request for Letter of Map Revision (LOMR) and a formal appeal to FEMA, seeking a revision of FEMA's map of the area. The LOMR stated that the revision was being requested "in order to take into account the recent completion of the rough grading of the Goose Creek Channel Improvement Project," and the appeal similarly stated that it was "being made to account for certain construction activities that have altered the floodplain." Boulder's floodplain coordinator testified that the LOMR was filed "specifically in response to the completion of Phase I improvements."

FEMA issued a new map in 1988 that designated the property as being in Zone A, the floodway of Goose Creek, where construction of improvements was prohibited; Boulder subsequently adopted floodplain ordinances that identified the property as being predominantly in a high flood hazard zone in which development was prohibited. Boulder's floodplain coordinator conceded in his testimony that Boulder had not adopted such an ordinance, and FEMA did not have any official map identifying a floodway on the property, before the publication of the 1988 FEMA map.

Boulder cites contrary evidence that, it argues, establishes that there was no impact on the floodway or high hazard designation caused by its channelization project. However, the trial court, whose function it is to weigh the evidence and assess credibility, *see M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994), was not persuaded by Boulder's evidence. Because the court's finding that the designations resulted from the project is not clearly erroneous, it may not be set aside on appeal. *See E–470 Public Highway Authority v. 455 Co., supra,* 3 P.3d at 22.

### D.

In sum, the trial court applied a correct legal analysis in resolving the issue before it, and its factual findings are not clearly erroneous. Accordingly, we uphold its ruling that the designations limiting use of the property resulted from the project and therefore could not be considered in valuing the property.

### II.

Boulder next contends that the trial court abused its discretion in refusing to permit it to present a surrebuttal witness at the valuation trial. Again, we disagree.

Whether to allow a party to call a surrebuttal witness is within the sound discretion of the trial court, whose decision will not be disturbed absent an abuse of that discretion. See *Rice v. Department of Corrections*, 950 P.2d 676 (Colo.App.1997); see also *E-470 Public Highway Authority v. 455 Co.*, *supra*, 3 P.3d at 23 (trial court has substantial discretion in deciding relevancy, probative value, and prejudicial impact of evidence; its ruling will be set aside as an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair).

Here, after one of the Trust's experts had testified that the Trust property would not be subject to any major drainage or flooding issues, Boulder sought to present testimony from its own expert concerning flaws in the study and conclusions of the Trust's expert. The Trust's counsel objected, arguing that the proffered witness had not done any independent analysis, but had simply "picked apart" a portion of its witness's study that had not been put into evidence, and that the Trust had the right to have the final word on an issue on which it had the burden of proof.

The trial court excluded the testimony under CRE 403. It noted that the proceedings had been scheduled for three days and that it was 5:00 p.m. on the third day; that Boulder had already called two witnesses to testify that, contrary to the opinion of the Trust's expert, flood water would flow over the property; and that the interests of fairness and prevention of unfair prejudice or confusion of

the issues warranted excluding the surrebuttal testimony.

The ruling was not manifestly arbitrary, unreasonable, or unfair and therefore will not be set aside as an abuse of discretion.

The judgment is affirmed.

Judge KAPELKE and Judge CASEBOLT, concur.